**Wanda Joy HILLS, Appellee,**

v.

**IOWA DEPARTMENT OF TRANSPOR-
TATION AND MOTOR VEHICLE
DIVISION, Appellant.**

No. 94–453.

Supreme Court of Iowa.

May 24, 1995.

As Amended on Denial of Rehearing
July 14, 1995.

Thomas J. Miller, Atty. Gen., David A. Ferree, Sp. Asst. Atty. Gen., and Kerry Anderson, Asst. Atty. Gen., for appellant.

Wanda Hills, Muscatine, pro se.

Considered by HARRIS, P.J., and LARSON, CARTER, LAVORATO, and SNELL, JJ.

HARRIS, Justice.

A statutory change called for revocation of drivers' operating privileges upon certain listed criminal convictions. The question here is whether the change applies to convictions that occurred after the effective date, but for acts committed previously. The district court reversed such a revocation, determining that to allow it would amount to an ex post facto application of the law. We affirm.

Petitioner Wanda Joy Hills was arrested for operating a motor vehicle while intoxicated on April 1, 1993. Following a search incident to arrest, she was also charged with possession of marijuana in violation of then Iowa Code section 204.401(3) (1991) (section 204.401(3) has since been renumbered as section 124.401(3) (1995)).

Hills arranged to plead guilty to the marijuana possession charge at a pretrial conference, initially scheduled for June 29, 1993. On June 22, however, the district court, on its own motion, changed the date of the pretrial hearing to July 2, 1993. Hills en-

tered her guilty plea on July 2. In the meantime, on July 1, 1993, Iowa Code section 321.209(8) became effective. It provides for mandatory revocation by the DOT of the driver's license of anyone convicted of a controlled substance offense under Code section 124.401.[1]

The DOT revoked Hills' license over her protest that there could be no revocation on the basis of occurrences prior to July 1, 1993. On judicial review the district court reversed the agency action, holding that, to apply the new statute to offenses committed prior to its effective date, violated the ex post facto principles of the state and federal constitutions. The DOT brought this appeal to challenge the holding.

**▬** I. Ex post facto applications of law are prohibited by article I section 9 clause 3 of the United States Constitution and by article I section 21 of the Iowa Constitution. The ex post facto clauses forbid

> [punishing as a crime] an act previously committed, which was innocent when done, [or making] more burdensome the punishment for a crime, after its commission, or [depriving] one charged with crime of any defense available according to [the] law at the time when the act was committed.

*Adair Benevolent Soc'y v. State,* 489 N.W.2d 1, 4 (Iowa 1992); *see also State v. Kaster,* 469 N.W.2d 671, 673–74 (Iowa 1991). The ex post facto prohibition applies only to penal and criminal actions, not to civil actions. *State v. Taggart,* 186 Iowa 247, 254, 172 N.W. 299, 301 (1919) (citing *Calder v. Bull,* 3 U.S. (3 Dall.) 386, 1 L.Ed. 648 (1798)). Our review of this constitutional question is de novo. *State v. Niehaus,* 452 N.W.2d 184, 187 (Iowa 1990).

**▬** II. The question is whether the revocation was, in essence, a punishment. If so the ex post facto prohibition would apply. On the other hand if the revocation was merely a civil penalty, designed to enhance public safety, the ex post facto prohibition would not apply. This is because civil penalties do not violate ex post facto clauses, even though their penalties may be retroactive and more burdensome. Thus our controlling question is whether license revocation based on possession of a controlled substance is a civil penalty or a criminal (or a quasi-criminal) punishment.

The State argues that license revocations are civil in nature, and as an abstract proposition cases support this contention. *See, e.g., State v. Moret,* 486 N.W.2d 589, 591 (Iowa 1992) (driver's license suspension of a habitual offender of motor vehicle laws is for public safety, not for punishment of the offender); *State v. Blood,* 360 N.W.2d 820, 822 (Iowa 1985) (driver's license revocation for OWI not intended as punishment but designed solely for the protection of the public). In *State v. Funke,* 531 N.W.2d 124, 126 (Iowa 1995), we rejected a former jeopardy challenge to a driver's license revocation on the basis that a civil proceeding was involved, not a criminal one. Because it was a civil proceeding, we found the former jeopardy prohibition no impediment to the revocation because the statute authorizing revocation did not serve both the twin goals of punishment—deterrence and retribution. We said public safety—not punishment—was the goal; deterrence and retribution were not involved. *Id.* at 126.

Our *Funke* former jeopardy holding, however, does not necessarily control Hills' ex post facto challenge. Ex post facto, in contrast with former jeopardy challenges, cannot be posited on civil matters. Iowa has limited the doctrine to cases criminal in nature. *In re Ponx,* 276 N.W.2d 425, 428 (Iowa 1979). This limitation on the ex post facto doctrine applies even where the civil consequences are "serious" in nature. *Id.*

The question then is whether Hills' license revocation, based on the controlled substance violation, was civil or criminal in nature. The answer turns on whether the essential aim of

---

1.  Iowa Code § 321.209(8) states:

    **Mandatory revocation.** The department shall upon twenty days' notice and without preliminary hearing revoke the license or operating privilege of an operator upon receiving a record of the operator's conviction for any of the following offenses, when such conviction has become final:

    . . . .

       8. A controlled substance offense under section 124.401. . . .

the controlled substance revocation was to promote highway safety. We think in this respect it differs from the "habitual offender" revocation statute we considered in *Funke*.

In contending the revocation is civil in nature, the DOT argues there is a "direct connection" between the possession of controlled substances, driving, and public safety. The district court did not perceive such a connection and neither do we. Persons who illegally possess drugs are of course subject to appropriate criminal punishment. But many such persons choose not to drive. When they do not, they do not affect highway safety. Any connection between drugs, driving, and public safety is at most indirect. The amended statute authorizing this license revocation was aimed essentially at enhancing punishment for controlled substance possession. As such it was quasi-criminal and not civil in nature. Ex post facto principles therefore prohibit application of the amended statute. The district court was correct in so holding.

**AFFIRMED.**