The STATE of Ohio, Appellee,

v.

FONSECA, Appellant.

[Cite as *State v. Fonseca* (1995), 106 Ohio App.3d 115.]

Court of Appeals of Ohio,
Sixth District, Wood County.

No. WD–94–113.

Decided Aug. 25, 1995.

*Alan R. Mayberry*, Wood County Prosecuting Attorney, for appellee.

*William V. Stephenson*, for appellant.

---

*Per Curiam.*

This case is before us on appeal from a judgment of the Wood County Court of Common Pleas, which convicted and sentenced appellant, Guadalupe Fonseca, for drug trafficking in violation of R.C. 2925.03(A)(4).

On March 17, 1994, appellant was arrested when, pursuant to a warrant, Perrysburg police searched his home and found approximately thirty-two pounds of marijuana. Appellant pled guilty to drug trafficking and was sentenced to a prison term of two years. In addition, the trial judge ordered that appellant's driver's license be suspended for a period of five years, pursuant to R.C. 2925.03(M). That statute states in pertinent part:

"In addition to any other penalty imposed for a violation of this section, the court * * * shall suspend for not less than six months nor more than five years the driver's or commercial driver's license of any person who is convicted of or pleads guilty to any other violation of this section."

Appellant now appeals the suspension of his driver's license, raising the following assignment of error:

"The trial court erred in suspending appellant's driver's license pursuant to Revised Code 2925.03(M), because said statute is unconstitutional."

Appellant contends that this mandatory license suspension provision violates the Due Process Clause of the Fourteenth Amendment.

In examining the constitutionality of a legislative enactment, we start with the premise that all such laws are presumed to be constitutional. *Roosevelt Properties Co. v. Kinney* (1984), 12 Ohio St.3d 7, 13, 12 OBR 6, 11–12, 465 N.E.2d

421, 426–427. Moreover, unconstitutionality must be proven beyond a reasonable doubt. *Id.* A driver's license is a property interest that may not be infringed without due process of law. *Bell v. Burson* (1971), 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90. However, such a license is not a fundamental right. *Wilsch v. Bencar* (1966), 7 Ohio App.2d 165, 36 O.O.2d 305, 219 N.E.2d 311, paragraph two of the syllabus. Where a statute under review does not affect a fundamental right, the appropriate level of scrutiny is the "rational basis" test. *Williamson v. Lee Optical of Oklahoma, Inc.* (1955), 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563. Thus, if the statute has "a reasonable relation to a proper legislative purpose, and [is] neither arbitrary nor discriminatory, the requirements of due process are satisfied * * *." *Nebbia v. New York* (1934), 291 U.S. 502, 537, 54 S.Ct. 505, 516, 78 L.Ed. 940, 957.

▇ In support of his argument, appellant relies on the Montgomery County Court of Common Pleas case of *State v. Gowdy* (1994), 64 Ohio Misc.2d 38, 639 N.E.2d 878. The court in *Gowdy* found R.C. 2925.03(M) unconstitutional and in so doing, relied on an Illinois Supreme Court case, *People v. Lindner* (1989), 127 Ill.2d 174, 129 Ill.Dec. 64, 535 N.E.2d 829. At issue in *Lindner* was a statutory provision requiring driver's license suspension for convicted sex offenders, even when a motor vehicle was not involved in the commission of the offense. The Illinois Supreme Court determined that the sole purpose of the license suspension provision was the promotion of safe roadways. The *Gowdy* court, in finding R.C. 2925.03(M) unconstitutional, followed this reasoning, stating "[this] court finds the Illinois case of *People v. Lindner* * * * very persuasive. * * * [The *Lindner* ] court concluded that the means chosen by the Illinois legislature—license suspension—was not a reasonable method to accomplish the goal of the specific statute—the safe and legal operation and ownership of motor vehicles." An examination of R.C. 2925.03(M), however, reveals significant differences from the Illinois statute at issue in *Lindner.*

The Illinois license suspension provision is a component of the state Vehicle Code. The stated purpose of that title "is to ensure that drivers who have demonstrated they are unfit to safely operate vehicles are not allowed to drive." *Lindner,* 127 Ill.2d at 182, 129 Ill.Dec. at 67, 535 N.E.2d at 832. Because the Illinois provision included such a statement of purpose, the *Lindner* court limited its consideration to the statute's explicit purpose of maintaining safe roadways. R.C. 2925.03(M), however, does not contain a statement of purpose. Thus, a court is limited in construing its purpose only by what it believes the legislature could reasonably have intended that purpose to be. In adopting the reasoning of *Lindner,* the *Gowdy* court failed to distinguish these statutory differences and, consequently, we find its rationale unpersuasive.

One other Ohio court has considered the constitutionality of the license suspension provision. In *State v. Smith* (May 5, 1995), Washington App. No. 94CA21, unreported, 1995 WL 271727, appeal pending in case No. 95–1183, the Fourth District Court of Appeals held the license suspension provision constitutional as it relates to convictions for the use, possession or sale of drug paraphernalia. R.C. 2925.14. In so holding, the court specifically distinguished *Lindner*, as relied upon by *Gowdy*, and concluded that, because the license suspension provisions in R.C. 2925.03(M) and 2925.14(H) are silent as to purpose, the legislature may reasonably have intended the provisions to deter drug sales and transportation. The court then held that such a goal is reasonably related to suspending the driver's licenses of drug offenders.

In addition, the Supreme Courts of Florida, Georgia and Massachusetts have ruled, on facts similar to those at bar, that such license suspension provisions are constitutional.

In *Lite v. State* (Fla.1993), 617 So.2d 1058, the Florida Supreme Court upheld a mandatory license suspension penalty for adults convicted of drug possession, sales or trafficking. The court reasoned that the state legislature's goal, the reduction of substance abuse and crime, was legitimate. The court then ruled that a license suspension provision was reasonably related to that goal because such a penalty " 'will deter the incidence of illicit drug possession, sales and trafficking, curtail the transportation of illegal drugs, and reduce the mobility of those involved in drugs[.]' " *Id.* at 1060, quoting *State v. Lite* (Fla.1992), 592 So.2d 1202, 1204.

In *Quiller v. Bowman* (1993), 262 Ga. 769, 425 S.E.2d 641, the Georgia Supreme Court upheld a license suspension provision for drug offenders after concluding that the goal of the legislature was the deterrence of illegal drug use and transportation. The court ruled that "[t]his rational relationship between the law and the legislative purpose exists even when the conviction for a drug offense is not related to the use of a motor vehicle. The suspension of the drug offender's license furthers the state's interest in reducing the sale and distribution of drugs * * *." *Id.*, 262 Ga. at 771, 425 S.E.2d at 643.

Finally, in *Rushworth v. Registrar of Motor Vehicles* (1992), 413 Mass. 265, 596 N.E.2d 340, the Massachusetts Supreme Court upheld a license suspension provision for drug offenders. Reasoning that the legislature enacted the law to discourage the unlawful sale and use of drugs, the court concluded that "license suspensions for those who are convicted of violations of [the Controlled Substances Act] could serve as a deterrent to illegal drug distribution and use * * *." *Id.*, 413 Mass. at 270–271, 596 N.E.2d at 344.

We find the reasoning of the Ohio Fourth District Court of Appeals and the Supreme Courts of Florida, Georgia and Massachusetts persuasive and hold R.C.

2925.03(M) constitutional. Specifically, we find that the Ohio legislature may reasonably have intended R.C. 2925.03(M) to impede the transportation and distribution of illegal drugs. Suspending the license of drug offenders, particularly those convicted of trafficking as in the case at bar, is reasonably related to this proper legislative goal. Consequently, the requirements of due process are satisfied and, thus, we find appellant's sole assignment of error not well taken.

*Judgment affirmed.*

GLASSER and MELVIN L. RESNICK, JJ., concur.

GREY, J., dissents.

LAWRENCE GREY, J., retired, of the Fourth Appellate District, sitting by assignment.

GREY, Judge, dissenting.

I respectfully dissent.

I agree with the majority that the opinion of the Fourth District Court of Appeals in *State v. Smith, supra,* is directly on point, but I believe the position advanced in Judge Harsha's dissent in that case is correct.

The issue in this case, as I see it, entails the most basic constitutional question about the allocation of power between the separate branches of government. That issue is clouded somewhat by the obvious effect of R.C. 2925.03(M).

If, after a person has completed his sentence for a drug offense, he cannot drive a car, he is unlikely to be able to find a job, or get to it if he does. Although we give ex-convicts the biblical mandate, "Go thou and sin no more," the statute almost guarantees that he will be unable to hold a job and will have to resort to some illegal activity to get by, *e.g.,* driving without a license or, worse, going back to selling drugs. This statute is clearly counterproductive, and perhaps even foolish, but that alone is not grounds for the courts to interfere with the exercise of legislative constitutional power. Cynically put, it is well within the constitutional prerogative of the legislature to enact counterproductive, or even foolish laws.

The legislative branch is the democratic branch, that part of the government that is supposed to react and respond to public sentiment. Clearly, public sentiment is against drug dealing, and just as clearly the public is aware that the already heavy sanctions are not working. The legislature, in response to the public outcry, enacted R.C. 2925.03(M).

The question for the court is quite a different one. Is this sanction reasonably related to some state interest, or is there a rational basis for this sanction? Any sanction, of course, is directed at either punishment or deterrence.

The majority opinion in this case upholds the driver's license suspension on a deterrence theory, saying the sanction will discourage the sale and transportation of illegal drugs. Suspending a person's license after he has been convicted to deter sales can only have the intent of deterring future sales. This rationale presumes that the person will, after completing his sentence, engage in further drug sales and will use a motor vehicle to do so. In light of the much more severe penalties for a second offense, the driver's license suspension pales in comparison. The sanction will only have a deterrent effect on those who do not return to drug sales.

Presuming a person will commit further crimes, and punishing him before he does so, is neither rational nor constitutional. It is a particularly dubious assumption to make in a case such as this where the drug offender did not use a car in committing his first offense. There is no rational basis in deterrence for this statute.

*Smith, supra,* advances a punishment theory, *i.e.*, that heavy punishments themselves are deterrents to crime and the legislature enacted R.C. 2925.03(M) not to punish or deter second offenses, but to make the punishment for the first offense so severe as to make it unattractive. If the legislature can direct that a criminal be deprived of his money or even his liberty, why is it not within its power to deprive him of his driver's license?

This is the crux of this case. It is not within its power because driving is not related to the drug offense. For example, a person has the right to use a cellular phone, and the use of cellular phones is common among drug dealers. They are also used by many others for quite legitimate purposes. Could a statute bar ex-drug offenders from using cellular phones?

A person who meets the academic standards is entitled to attend a state university. Colleges are full of young people away from home and the guiding influence of parental control for the first time, so we do not want drug dealers on campus. Could the legislature deny the right of admission to college, much as R.C. 2925.03(M) denies the right to a driver's license?

Many cities license street vendors who sell food like hot dogs and tacos from pushcarts. These pushcarts are a perfect cover for drug sales as many people stop by, some for a hot dog, and some for a bag of marijuana or cocaine. Could the legislature bar ex-drug offenders from operating pushcarts?

If cellular phones, college admissions, and pushcart licenses could be denied, what could not? If an ex-drug offender waters his garden, he might have

marijuana growing there and ought to be subject to a lifetime sprinkling ban. If he rents a garage in a public storage facility, it might be used to store contraband. There is almost no end to the activities that are ordinary and legal, but which can also be done to further some drug crime. Can the legislature bar ex-drug offenders from each and every one of these activities?

No. The legislature can only ban those activities that are rationally related to the offense. *Williamson, supra.* The majority opinion approves of the license suspension, but the real question in this case is: If a five-year driver's license suspension is rationally related, what conduct is not?

I have made up an argument for each of the activities above, an argument at least as good as the one for the driver's license suspension. Some rationale can be advanced for any sanction, but the courts must look to see if the sanction meets the rational basis test.

That test requires that the sanction be related to the crime. We bar sex offenders from schools. We bar felons from carrying guns. We bar drunk drivers from driving. We bar ex-drug offenders from working in pharmacies. We can impose all these sanctions because they are rationally related to the crime committed. Driving is no more related to drug offenses than it is to rape or bank robbery, but we do not suspend the licenses of rapists or robbers, even the ones who used a car in their crime.

The legislature is frustrated, much as the public is, about the problem of drugs. In that frustration, it adopted R.C. 2925.03(M) which imposes a penalty not rationally related to drug crimes. The courts have a constitutional duty to look for a rational basis. If we find none, if we find that the statute is only an overreaction to the public outcry, we are just as constitutionally bound to strike that statute down.

The legislature's position is more enviable than that of the courts. Its action is popular, while the court's exercise of its duty to decide when things have gone too far is not. To hold that this statute is unconstitutional is, by definition, unpopular, but that is what the Constitution is all about.

I am convinced that R.C. 2925.03(M) is unconstitutional because there is no rational relationship between the crime and the punishment. The evil that drugs cause is not to be discounted, but that evil does not compare to the evil which will come from abandoning our constitutional principles. While a drug-free America is a popular goal, it ought not be purchased at the price of Constitution-free America.

Thus, I dissent.