**STATE of Iowa, Appellee,**

v.

**Walter A. BELL, Appellant.**

No. 96–2254.

Supreme Court of Iowa.

Dec. 24, 1997.

James L. Beres of Sween & Beres, P.C., Eldora, for appellant.

Thomas J. Miller, Attorney General, Mary Tabor, Assistant Attorney General, Richard N. Dunn, County Attorney, and Chad Frese and Tim Eppler, Assistant County Attorneys, for appellee.

Considered by HARRIS, P.J., and LARSON, CARTER, LAVORATO, and SNELL, JJ.

LARSON, Justice.

Walter Bell pled guilty to possession of marijuana in violation of Iowa Code section 124.401(3) (1995). As part of the sentence, the court ordered that Bell's driver's license be revoked as provided by 1996 Iowa Acts chapter 1218, section 68 (now codified at Iowa Code section 901.5(10) (1997)). Bell appealed on the grounds that the revocation order violated the Due Process and Equal Protection Clauses of the United States and Iowa Constitutions. U.S. Const. amends. V, XIV, § 1, Iowa Const. art. I, § 9 (due process); U.S. Const. amend. XIV, § 1, Iowa Const. art. I, § 6 (equal protection). We affirm.

Because Bell raises constitutional claims, we review the case de novo. *Bruns v. State,* 503 N.W.2d 607, 609 (Iowa 1993). Because of their similarity, we will treat the issues under the federal and state constitutional provisions simultaneously. Bell concedes that his driving privilege does not rise to the level of a fundamental right and that the statute does not create a suspect classification; therefore, his constitutional claims are examined under a rational-basis analysis. *Glowacki v. State Bd. of Med. Exam'rs,* 501 N.W.2d 539, 541 (Iowa 1993). Under this analysis, a statute is constitutional "unless it is patently arbitrary and bears no rational relationship to a legitimate governmental interest." *Id.* Under the rational-basis test, (1) the statute must serve a legitimate governmental interest, and (2) the means employed by the statute must bear a rational relationship to that interest. *Id.*

The statute in question, Iowa Code § 901.5(10) (1997), provides:

> In addition to any sentence imposed pursuant to chapter 902 [felonies] or 903 [misdemeanors], the court shall order the state department of transportation to revoke the defendant's driver's license or motor vehicle operating privilege for a period of one hundred eighty days ... if the defendant is being sentenced for any of the following offenses:
>
> *a.* A controlled substance offense under section 124.401....

Statutes are presumed to be constitutional, and the challenger carries a heavy burden of rebutting this presumption. *Glowacki,* 501 N.W.2d at 541. We are reluctant to interfere with the legislature's latitude in fixing punishment, and to be found unconstitutional, a statute "must clearly, palpably, and without doubt infringe upon the constitution." *Id.* (citations omitted). The prevailing view is that statutes similar to the one in this case are valid under the rational-basis test for due process and equal protection. *See generally* Jeffrey T. Walter, Annotation, *Validity and Application of Statute or Regulation Authorizing Revocation or Suspension of Driver's License for Reason Unrelated to Use of, or Ability to Operate, Motor Vehicle,* 18 A.L.R.5th 542, 551 (1994 & Supp. 1997).

## I. *The Due Process Claim.*

Bell argues that the revocation requirement is an extreme response to a minor offense such as possession of marijuana. He

contends that the revocation of driving privileges bears no significant relationship to the legislative objective of public safety on the highway. However, under the rational-basis test, it is not enough for a party challenging the statute to show that the connection between the governmental purpose and the means used is "insignificant." The challenger must show that the statute bears no rational relationship to the government's interest. *Glowacki*, 501 N.W.2d at 541.

A number of courts in other jurisdictions have held that similar statutes are valid under the rational-basis test. *See, e.g., People v. Zinn*, 843 P.2d 1351, 1354 (Colo.1993) (revocation sanction reasonable in view of governmental objective to prevent possession, use, or sale of controlled substances); *Lite v. State*, 617 So.2d 1058, 1060 (Fla.1993) (penalty rationally related to deterrence goal); *Quiller v. Bowman*, 262 Ga. 769, 425 S.E.2d 641, 642–43 (1993) (license suspension furthers state's goal of deterring illegal drug use and transportation of illegal drugs); *Mitchell v. State*, 659 N.E.2d 112, 116 (Ind. 1995) (statute bears rational relationship to legitimate state interest in punishing and deterring lawbreaking).

We conclude, as have these and other courts, that punishment in the form of a license revocation is rationally related to the goals of the legislature in punishing and deterring the commission of crime.

## II. *The Equal Protection Claim.*

Bell contends that this statute singles out drug offenders from other criminal defendants without a rational basis for doing so. He claims that the limitation to drug offenders is arbitrary because the mandatory revocation provision could also effectively deter crimes such as theft, burglary, and rape. He also points out that the statute imposes "the same penalty upon casual users of marijuana and repeat dealers of crack cocaine," thereby suggesting that the statute is overbroad.

■ We have held that all persons need not be treated alike to meet constitutional standards for equal protection. *Hack v. Auger*, 228 N.W.2d 42, 43 (Iowa 1975). Moreover, the legislature has wide discretion in

defining the limits of classes when a statute involves classifications of persons or things. If a classification is a reasonable one and operates equally upon all within the class, it is a valid classification. *State v. Hall*, 227 N.W.2d 192, 194 (Iowa 1975).

We have stated the test for equal protection as follows:

"[T]he classification must be sustained unless it is patently arbitrary and bears no rational relationship to a legitimate governmental interest. It does not deny equal protection simply because in practice it results in some inequality; practical problems of government permit rough accommodations; and the classification will be upheld if any state of facts reasonably can be conceived to justify it."

*Id.* (quoting *Lunday v. Vogelmann*, 213 N.W.2d 904, 907 (Iowa 1973) (citations omitted)).

■ There are a number of possible state interests that the statute advances. The legislature may have concluded that individuals convicted of drug offenses are more likely to cause dangerous conditions on public roads than are other criminal defendants because their drug use actually may impair their driving abilities. Moreover, the legislature may have believed that the statute would cut down on the transportation and trafficking of drugs and, therefore, the use of drugs, while it may not have believed that a similar revocation statute for more violent crimes would have reduced the incidence of such crimes. Any of these reasons would be sufficient to show that the statute is not patently arbitrary and therefore does not violate the Equal Protection Clause.

Decisions from other states have upheld similar statutes on equal protection grounds. In fact, this appears to be the majority view. For example, the Georgia Supreme Court upheld a statute that required the suspension of the driver's license of anyone who was convicted of possession of a controlled substance or marijuana. *Quiller*, 425 S.E.2d at 642. The court concluded:

[T]he statute does not violate equal protection. The disparate treatment between persons convicted of illegal drug possession and persons convicted of other crimes

bears a reasonable relationship to the statute's purpose in deterring drug use, curtailing the distribution of drugs, and protecting motorists. Committing the crimes of murder, assault, rape, and other violent acts, although dangerous, do not normally interfere with the driving ability of the offender. In contrast, the driving judgment and ability of a person who possesses and uses illegal drugs, like a juvenile who illegally possesses and drinks alcohol, is likely to be impaired.

*Id.,* at 643.

Likewise, the Supreme Court of Massachusetts found no equal protection violation in a statute that required the automatic suspension of the driver's license of anyone convicted of violating the state's Controlled Substances Act. *Rushworth v. Registrar of Motor Vehicles,* 413 Mass. 265, 596 N.E.2d 340, 341–42 (1992). The court outlined the possible goals of the legislature and its means for achieving those goals, noting:

> The Legislature appears to have determined that persons convicted of less serious drug offenses should suffer the penalty of license suspension while more serious offenders should be incarcerated. The Legislature may also have decided that added measures were needed to discourage drug use among "casual" drug users and to prevent impaired driving. That [the statute], in practice, may have an impact in a disproportionate manner on drug offenders who operate motor vehicles does not offend the equal protection clause.... Under the rationality test, [the statute] is clearly constitutional.

*Id.,* at 345 (citation omitted).

The Iowa Legislature may have had similar objectives in mind when it promulgated Iowa Code section 901.5(10). We have in analogous circumstances held that the legislature may treat different types of criminals differently for various purposes. *See, e.g., State v. Iowa Dist. Ct.,* 508 N.W.2d 692, 694 (Iowa 1993) (statute preventing third-degree sex offenders from receiving bail does not violate equal protection); *State v. Fagen,* 323 N.W.2d 242, 243 (Iowa 1982) (statute imposing mandatory term of imprisonment for forcible felony does not violate equal protection).

Bell relies on language in *Hills v. Iowa Department of Transportation,* 534 N.W.2d 640 (Iowa 1995), which, he claims, supports his argument that there is no rational basis for connecting drug use and motor vehicle safety. In *Hills* we said:

> Persons who illegally possess drugs are of course subject to appropriate criminal punishment. But many such persons choose not to drive. When they do not, they do not affect highway safety. Any connection between drugs, driving, and public safety is at most indirect. The amended statute [Iowa Code section 321.209(8)] authorizing this license revocation was aimed essentially at enhancing punishment for controlled substance possession. As such it was quasi-criminal and not civil in nature. Ex post facto principles therefore prohibit application of the amended statute.

*Id.* at 642.

*Hills* is distinguishable from the present case for several reasons. *Hills* held that the license revocation statute was quasi-criminal, not civil, and therefore was subject to challenge as an ex post facto law because it enhanced the penalty for the earlier criminal investigation. *Id. Hills* was not an equal protection case. While it characterized the connection between drugs and highway safety as "indirect," it did not hold the connection to be irrational. Bell, in the present case, demonstrated that; the drugs were seized from a car occupied by him.

In a case following *Hills, Dressler v. Iowa Department of Transportation,* 542 N.W.2d 563 (Iowa 1996), we again said that the revocation statute, Iowa Code section 321.209(8) (which was later amended, apparently in response to *Dressler* ), was penal, not civil, and

> [b]ecause section 321.209(8) twice punishes Dressler for the same offense—possession of a controlled substance—in a separate proceeding, we conclude it unconstitutionally contravenes Dressler's double jeopardy guarantees.

*Id.* at 566. *Dressler,* again, did not involve an equal protection argument, and nothing in that case suggests that the connection be-

tween drug usage and highway safety could not provide a rational basis for the statute.

In addition to a rational basis in promoting highway safety, the legislature may have rationally intended that the revocation provision curtail the distribution of drugs, an activity directly related to the use of motor vehicles. *See Quiller,* 425 S.E.2d at 643.

We conclude that Bell has failed to demonstrate that the license-revocation statute lacks any rational basis for treating drug offenders differently from other criminal offenders. Therefore, we reject his equal protection argument.

**AFFIRMED.**

All justices concur except SNELL, J., who dissents.

SNELL, Justice (dissenting).

I respectfully dissent.

What is rational? Is its meaning only in the eye of the beholder? Do its boundaries flex with the exigencies of the case before us? These questions naturally come from an examination of the constitutional requirements in assessing the legality of legislation. From that assessment, I conclude that "rational" is not a plastic concept that readily yields to individual predispositions. Rather, it is a firm guide that must be protected, rooted as it is in the Due Process Clauses of the United States and Iowa Constitutions.

In 1996 the Iowa legislature, in its laudable attempt to discourage use of illegal drugs, passed a law requiring the Department of Transportation to revoke the driving privileges of any person convicted of a drug offense. Iowa Code § 901.5(10) (1997). The majority decision finds no constitutional infirmity and applies the revocation section to defendant Bell.

Bell, a nineteen-year-old college student, pleaded guilty to the offense of possession of marijuana. The facts are that a police officer found a green leafy substance believed to be marijuana under the seat of Bell's car. Bell testified that a friend of his said that he (the friend) put the substance in Bell's car. Bell was told by the judge that he was in constructive possession because it was his car.

No accusation was made that Bell was engaged in delivery of a controlled substance or that Bell had been driving the car. Bell was fined $250 plus a statutory surcharge of thirty percent ($75) and court costs of $65, totalling $390, and his driver's license was revoked for 180 days.

Bell asserts that applying the statute to him violates the Due Process Clauses of the United States and Iowa Constitutions. U.S. Const. amends. V, XIV, § 1; Iowa Const. art. I, § 9. Because the statute does not affect a fundamental right, the appropriate level of scrutiny is the "rational basis" test. *Williamson v. Lee Optical of Okla., Inc.,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). Under this test, the statute must bear a reasonable relationship to a legitimate governmental interest. *Glowacki v. State Bd. of Med. Exam'rs,* 501 N.W.2d 539, 541 (Iowa 1993).

The statute mandating license revocation fails to state any legislative purpose intended to be accomplished. There is also no evidence in this record to establish a legislative goal. To provide a rational relationship, the majority decides that the legislature had the goal of punishing and deterring the commission of crime and promoting public safety by keeping this class of offenders off the public roads. Having identified the governmental interest, does this legislation bear a reasonable relationship to the goals?

We have recently, in 1995, considered this legislation as to its nature and purpose. We said:

In contending the revocation is civil in nature, the DOT argues there is a "direct connection" between the possession of controlled substances, driving, and public safety. The district court did not perceive such a connection and neither do we. Persons who illegally possess drugs are of course subject to appropriate criminal punishment. But many such persons choose not to drive. When they do not, they do not affect highway safety. Any connection between drugs, driving, and public safety is at most indirect. The amended statute authorizing this license revocation was aimed essentially at enhancing punishment for controlled substance possession. As

such it was quasi-criminal and not civil in nature. Ex post facto principles therefore prohibit application of the amended statute. The district court was correct in so holding.

*Hills v. Iowa Dep't of Transp.*, 534 N.W.2d 640, 642 (Iowa 1995).

Our reasoning supporting our decision in *Hills* should be equally applicable to the issue in the instant case. The statute is the same, the offense of possession of marijuana is the same, and the claimed purpose of the statute is the same. We should honor our reasoning on the ex post facto issue in *Hills* and not ignore it when considering whether there is a rational relationship in the due process challenge of the instant case.

In *Hills*, the indirect connection between drugs, driving and public safety had at least some factual support in that Hills was arrested for driving while intoxicated. Following a search she was charged with possession of marijuana. By contrast, Bell was not operating nor was he charged with operating a motor vehicle. There is no connection or nexus between Bell's possession of marijuana and driving a motor vehicle. The indirect, at most, connection in *Hills* is a zero connection in Bell's case.

In examining similar legislation, the Illinois Supreme Court stated:

Because a vehicle was not involved in any way in the commission of the offenses for which defendant was convicted, the revocation of his license bears no relationship, much less a reasonable one, to the public interest we have identified. The same is true of the other offenses enumerated in section 6–205(b)(2).

Moreover, the method used to further the public interest is not reasonable. Keeping off the roads drivers who have committed offenses not involving vehicles is not a reasonable means of ensuring that the roads are free of drivers who operate vehicles unsafely or illegally. To the contrary, the means chosen are arbitrary, not only because the offenses specified in section 6–205(b)(2) have no connection to motor vehicles, but also because the inclusion of those offenses and no others is arbitrary. That is, no reason suggests itself as

to why the legislature chose the particular offenses enumerated in section 6–205(b)(3), as opposed to other offenses not involving a vehicle.

For these reasons, we hold that the challenged provision is an unreasonable and arbitrary exercise of the State's police power in violation of the constitutional guarantee of due process and is therefore invalid.

*People v. Lindner*, 127 Ill.2d 174, 129 Ill.Dec. 64, 68, 535 N.E.2d 829, 833 (1989). Answering the other purpose, deterrence, put forth by the State in *Lindner*, and by the majority in the instant case, the court in *Lindner* said:

The State also argues that deterrence is a legitimate purpose of the challenged provision. If this is the statute's purpose, it clearly cannot meet the rational-basis test. We will accept the State's argument that where deterrence is the purpose, it need not be shown that the statute in fact deters anyone. However, the proposition that the legislature might have thought that the loss of driving privileges will deter persons from committing the sex and drug offenses listed in section 6–205(b)(2), all but one of which are felonies punishable by imprisonment, is simply not rational.

*Id.*, 129 Ill.Dec. at 65, 535 N.E.2d at 834 (citation omitted).

Addressing the same statute and its claimed purpose, the Illinois Appellate Court in *People v. Lawrence* said:

The State counters that revocation of driving privileges for delivery of a controlled substance can be reasonably related to the purpose of repressing the commission of such crimes. The same argument can be made for numerous other crimes committed without the use of a motor vehicle. The choice of this offense and no others remains an arbitrary decision of the legislature.

*People v. Lawrence*, 206 Ill.App.3d 622, 152 Ill.Dec. 80, 81, 565 N.E.2d 322, 323 (1990).

Of course, any sanction is directed at either deterrence or punishment and some rationale can be advanced for any sanction. However, it is the constitutional responsibili-

ty of the courts to assure that the sanction has a rational basis.

The deterrence objective embraced by the majority as a constitutionally sufficient purpose for this legislation, even as an indirect connection, if stare decisis is respected, is, nevertheless, logically unsupportive as a rational basis. Suspending a person's license after he has been convicted of a drug offense can only have the intent of deterring future offenses. This rationale presumes that the person will, after completing the sentence, engage in further drug offenses and will use a motor vehicle to do so. Given the much more severe penalty for second offenses, *see* Iowa Code § 124.411, the driver's license revocation would have a negligible effect in promoting deterrence. The sanction would most likely affect only those persons who would not, in any event, return to illegal drug use, a pointless and irrational deterrence application. *See State v. Fonseca,* 106 Ohio App.3d 115, 665 N.E.2d 685, 688 (1995) (Grey, J., dissenting).

Presuming a person will commit further crimes, and punishing him before he does, is neither rational nor constitutional. This assumption, that a person is something less than innocent of a crime that might be committed in the future, has the ring of obliviousness to constitutional rights. Moreover, it is an invidious assumption to make in a case such as this where the drug offender, Bell, did not use a car in committing his first offense. There is no rational basis for deterrence contained in this statute. *See id.*

The punishment theory as a rational basis is equally flawed. The idea here is that taking a person's driver's license will make the punishment for the first drug offense so severe as to make committing the offense too hazardous and unattractive. The question this raises is, if the legislature can punish by depriving a person's liberty, why is it not within its power to deprive him of his driver's license? The answer is, that it is not within the legislature's power, as the Due Process Clauses of our constitutions direct, because driving is not related to Bell's offense of possession of marijuana. *See id.*

Other legal activities engaged in by drug offenders, as well as law abiding citizens, may arguably have an indirect connection with illegal drug use. Use of cellular phones is common among drug offenders. Bank accounts are used. Offenders are often high school or college students attending school where drug use is prevalent. Does a rational basis exist for denying a drug offender's future use of a cellular phone, bank account, or attendance at school on the ground that this is reasonable to deter or punish the commission of crime? I do not think so. Our constitutional principles, logically applied, do not permit deterrent or punitive legislation that is without a rational basis. The United States Supreme Court has advised that the rational basis test, while deferential, is not a wholly toothless standard. *Mathews v. Lucas,* 427 U.S. 495, 510, 96 S.Ct. 2755, 2764, 49 L.Ed.2d 651, 664 (1976). Undue deference to legislation, that has no rational basis, undermines our principles of government structure whereby our constitutions set the standards for sound and lawful legislation. Without this recognition, our review of due process requirements is a meaningless exercise, reduced to the essence of toothlessness.

The legislature's frustration, and the public's, with the problem of extensive illegal drug use is understandable. Legislation that addresses this issue in hopes of providing some remedy is commendable. Yet, under our system of government, legislation must meet constitutional standards. And under our system, the courts have the constitutional responsibility of declaring a statute unconstitutional when constitutional principles have been violated. Often such a decision is an unpopular result.

I believe that this statute revoking Bell's driver's license cannot be upheld under the rational basis test of the Due Process Clauses of our constitutions. There is no rational relationship between the crime of possession of marijuana and the revocation of the offender's driver's license.

I would reverse and remand this case for vacation of the sentence revoking the defendant's driver's license.