Jason Ross LODER, Petitioner–
Appellant,

v.

IOWA DEPARTMENT OF TRANS-
PORTATION, MOTOR VEHICLE
DIVISION, Respondent–Appellee.

No. 00–0303.

Court of Appeals of Iowa.

Dec. 13, 2000.

John L. Sandy of Sandy Law Firm, P.C.,
Spirit Lake, for appellant.

Thomas J. Miller, Attorney General,
David A. Ferree, Assistant Attorney Gen-

eral, and Kerry Anderson, Assistant Attorney General, for appellee.

Heard by SACKETT, C.J., and HUITINK and HECHT, JJ.

SACKETT, C.J.

The petitioner-appellant, Jason Loder, appeals from the district court's ruling on judicial review affirming the revocation of his driver's license under Iowa Code section 321J.12 after a urine test revealed the presence of marijuana metabolites in his urine. Loder claims the revocation should be rescinded because the presence of marijuana metabolites in his chemical test sample bore no rational relationship to his ability to drive. Loder further claims an earlier revocation before he was twenty-one years old under Iowa Code section 321J.2A[1] for driving with a blood alcohol content above .02 should not be used to enhance a revocation of his driver's license under Iowa Code section 321J.12.[2] We affirm.

Loder was born on September 23, 1976. On December 26, 1998 he was arrested for operating a motor vehicle while intoxicated in violation of Iowa Code section 321J.2 (1997). A preliminary breath test indicated that Loder's alcohol level was well below .10. A requested urine sample revealed the presence of marijuana metabolites at a concentration of ninety-three nanograms per milliliter. There was evidence Loder smoked marijuana during a two-month period ending December 21, 1998, but had not smoked it in the five days preceding his arrest. The State eventually amended the OWI charge to public intoxication and Loder pled guilty to that charge.

On the basis of the test results showing the presence of the metabolites, the DOT gave Loder notice his license would be revoked for one year under Iowa Code section 321J.12(1). The revocation was enhanced as a result of his conviction before he was twenty-one under Iowa Code section 321J.2A.[3]

Loder initiated contested case proceedings challenging his license revocation. The license revocation was upheld throughout administrative proceedings. Loder filed a petition for judicial review asserting the revocation violated his constitutional rights. The State claimed Loder failed to preserve error on his constitutional claims. In its ruling, the district court

**1.** Effective July 1, 1998, section 321J.12(1) provides:

1. Upon certification, subject to penalty for perjury, by the peace officer that there existed reasonable grounds to believe that the person had been operating a motor vehicle in violation of section 321J.2, that there existed one or more of the necessary conditions for chemical testing described in section 321J.6, subsection 1, and that the person submitted to chemical testing and the test results indicated the presence of a controlled substance or other drug, or an alcohol concentration equal to or in excess of the level prohibited by section 321J.2, or a combination of alcohol and another drug in violation of section 321J.2, the department shall revoke the person's driver's license or nonresident operating privilege for the following periods of time:

a. One hundred eighty days if the person has had no revocation under this chapter.

b. One year if the person has had a previous revocation under this chapter.

Iowa Code § 321J.12(1) as amended, 1998 Iowa Acts ch. 1138, § 20.

**2.** Effective July 1, 1998, section 321J.12(1) was amended by adding the controlled substance language cited in footnote 1. Prior to the amendment, the section only provided for revocation upon a test failure for a blood alcohol concentration in excess of .10.

**3.** Section 321J.2A provides in pertinent part:

A person who is under the age of twenty-one shall not operate a motor vehicle while having an alcohol concentration, as defined under section 321J.1, of .02 or more. The driver's license or nonresident operating privilege of a person who is under the age of twenty-one and who operates a motor vehicle while having an alcohol concentration of .02 or more shall be revoked by the department for the period of time specified under section 321J.12.

Iowa Code § 321J.2A, first unnumbered paragraph.

stated "the Court will review the case on the merits, assuming error (if any) has been preserved for review." The court denied Loder's petition and upheld the license revocation. The district court rejected Loder's claims that the presence of marijuana metabolites in his system bore no rational relationship to his ability to drive and that a prior revocation under Iowa Code section 321J.2A should not enhance the revocation under Iowa Code section 321J.12. The court ruled the department properly revoked Loder's driving privileges for one year under section 321J.12(1)(b).

■ Assignments of error in judicial review proceedings which raise constitutional challenges require independent evaluation of the totality of the evidence from which the questions arise. *Iowa–Illinois Gas and Electric Co. v. Iowa State Commerce Comm'n*, 412 N.W.2d 600 (Iowa 1987).

The State claims that Loder failed to preserve any issues attacking the constitutionality of Iowa Code section 321J.12(1) for the revocation based on the presence of a controlled substance by not citing to specific constitutional provisions. The State makes a similar claim regarding the enhancement of the revocation based on the previous revocation under Iowa Code section 321J.2A. The district court faced a similar challenge to Loder's preservation of error and reviewed the case on the merits assuming any error was preserved.

■ Because of the change in the statutory provisions of Iowa Code section 321J.12 concerning controlled substances, challenges such as Loder's are likely to recur. Therefore in the interest of judicial economy, we address Loder's constitutional challenges to the statute on the merits. *See Shortridge v. State*, 478 N.W.2d 613, 615 (Iowa 1991). A statute must clearly, palpably, and without doubt infringe upon the constitution before we will declare it unconstitutional. *Larsson v. Iowa Bd. of Parole*, 465 N.W.2d 272, 273 (Iowa 1991). "A person challenging a statute must ne-

gate every reasonable basis upon which the statute could be upheld as constitutional." *Schroeder Oil Co. v. Iowa State Dep't of Revenue & Fin.*, 458 N.W.2d 602–603 (Iowa 1990).

■ Loder first challenges revocation of his driver's license under Iowa Code section 321J.12(1)(b) claiming the presence of marijuana metabolites in his system bears no rational relationship to his ability to drive. "Under the rational basis analysis, a statute is constitutional unless it is patently arbitrary and bears no rational relationship to a legitimate governmental interest." *Ruden v. Parker*, 462 N.W.2d 674, 676 (Iowa 1990) (quoting *Bennett v. City of Redfield*, 446 N.W.2d 467, 474 (Iowa 1989)). To survive this constitutional test (1) the statute must serve a legitimate governmental interest; and (2) the means employed by the statute must bear a rational relationship to that governmental interest. *Glowacki v. Board of Med. Exam'rs*, 501 N.W.2d 539, 541 (Iowa 1993).

In interpreting a similar statute providing for administrative revocation of a person's driver's license after multiple OWI convictions, the supreme court stated,

> Upon a third or subsequent violation, subsection 321.281(g)(a) triggers a court order directing an administrative agency to revoke the defendant's driving privileges. Such revocation "is not intended as a punishment to the driver, but is designed solely for the protection of the public in the use of the highways." 7A Am.Jur.2d Automobiles and Highway Traffic § 223 (1980).

*State v. Blood*, 360 N.W.2d 820, 822 (Iowa 1985). The same reasoning applies to section 321J.12. The administrative revocation of a driver's license is to protect the public in the use of Iowa's highways.

Loder argues the presence of marijuana metabolites in his system has no relationship to his ability to drive and, therefore, revoking his license for that reason bears no rational relationship to the governmen-

tal purpose of protecting the public on the highway.

Loder presented evidence that Michael L. Rehberg, a forensic toxicologist and administrator of Iowa's D.C.I. crime laboratory had testified "there is not a direct mathematical relationship or correlation between a urine/drug test and drug effect with this drug [marijuana] as there is with the drug alcohol." In addition, a notation on the test results from Loder's urine sample states, "[c]linical studies have not established a numerical correlation between urine drug concentration and impaired driving ability." Loder contends this evidence proves there is no direct relationship between the presence of drug metabolites and a persons' ability to drive. He argues revoking a person's driving privileges because of the presence of drug metabolites in one's urine is not rationally related to the purpose of protecting the public. We disagree.

The lack of any numerical correlation or direct relationship between the amount of marijuana metabolites in a person's system and the impairment of that person's ability to drive does not foreclose the finding that the statute is rationally related to protecting the public. The statute is aimed at keeping drivers who are impaired because of the use of illegal drugs off the highways. Unlike the blood alcohol concentration test used to measure alcohol impairment there is no similar test to measure marijuana impairment. There is, though, as was used here, a test to measure the use of marijuana, a drug illegal in the State of Iowa, in a person's body. There being no reliable indicator of impairment, the legislature could rationally decide that the public is best protected by prohibiting one from driving who has a measurable amount of marijuana metabolites.[4]

■ Other states which have addressed the constitutionality of similar statutory provisions based on a rational-relationship test have determined the prohibition against driving with the presence of a controlled substance in one's system was rationally related to the governmental goal of protecting other drivers and is a valid exercise of the state's police power. *See Love v. State*, 271 Ga. 398, 517 S.E.2d 53, 57 (1999); *People v. Fate*, 159 Ill.2d 267, 271, 201 Ill.Dec. 117, 636 N.E.2d 549, 551 (1994); *State v. Phillips*, 178 Ariz. 368, 371–72, 873 P.2d 706, 709–10 (Ariz.App. 1994). The revocation of a person's driving privileges for possession of a controlled substance has been upheld. *State v. Bell*, 572 N.W.2d 910, 912 (Iowa 1997). In *Bell* the defendant was not even driving. The court said, "[t]he legislature may have concluded that individuals convicted of drug offenses are more likely to cause dangerous conditions on public roads than are other criminal defendants because their drug use actually may impair their driving abilities." *Id.* The presence of marijuana metabolites or other illegal substance metabolites in a person's body showing recent use of a controlled substance is an equally compelling rationale related to the governmental purpose of protecting the public from impaired drivers. The revocation provisions of Iowa Code section 321J.12 serve a legitimate governmental purpose and are rationally related to that purpose. We affirm on this issue.

■ Loder also raises a constitutional challenge to the enhancement of the revocation period based on his prior conviction under Iowa Code section 321J.2A. In 1995 Loder was under twenty-one years old and convicted of driving with a blood alcohol content above .02. Iowa Code § 321J.2A. His license was revoked under that section. He argues the enhancement "triggers ex post facto concerns as his punishment is being enhanced based upon conduct that would not now be illegal for him." The ex post facto provisions of the federal and state constitutions prohibit,

---

4. The Iowa Department of Transportation adopted the federal guidelines for determining detectable levels of controlled substances.

Iowa Admin. Code r. 661–7.9. Loder's test result of 93 ng/ml was nearly twice the 50 ng/ml minimum level of the rule.

[punishing as a crime] an act previously committed, which was innocent when done, [or making] more burdensome the punishment for a crime, after its commission, or [depriving] one charged with crime of any defense available according to [the] law at the time when the act was committed.

*Hills v. Iowa Dept. of Transp. and Motor Vehicle Div.*, 534 N.W.2d 640, 641 (Iowa 1995) (quoting *Adair Benevolent Soc'y v. State*, 489 N.W.2d 1, 4 (Iowa 1992)).

The enhancement of his current revocation is based on "a previous revocation under this chapter." Iowa Code § 321J.112(1)(b). The 1998 amendments[5] to section 321J.12 do not make any previously innocent act a crime, make the punishment more burdensome after the crime was committed, or deprive Loder of any defense which was available when the act was committed. The enhancement of his license revocation does not violate the ex post facto provisions of the federal or Iowa constitutions.

Having concluded that Iowa Code section 321J.12, as amended, is constitutional, we affirm the district court's decision on judicial review of the revocation of Loder's driver's license.

**AFFIRMED.**

---

5. 1998 Iowa Acts ch. 1138, § 20.