STATE of Iowa, Appellee,

v.

Rodney Lee CEASER, Appellant.

No. 97–1754.

Supreme Court of Iowa.

Sept. 23, 1998.

Linda Del Gallo, State Appellate Defender, and Shellie L. Knipfer, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Robert P. Ewald, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and D. Raymond Walton, Assistant County Attorney, for appellee.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, NEUMAN, and TERNUS, JJ.

TERNUS, Justice.

A jury found the defendant, Rodney Lee Ceaser, guilty of second-degree robbery, *see* Iowa Code §§ 711.1, .3 (1997), and the trial court sentenced him to a mandatory ten-year term of imprisonment, *see id.* §§ 902.9(3), .12. Ceaser appeals his conviction and sentence, contending (1) the trial court erroneously refused to instruct the jury on his claim of self-defense, and (2) Iowa Code section 902.12, which requires that he serve 100% of the maximum sentence without the possibility of parole or work release, violates the Equal Protection Clause of the federal and state constitutions. *See* U.S. Const. amend. XIV, § 1; Iowa Const. art. 1, § 6. The State claims error was not preserved on the latter issue. In response, Ceaser asserts his trial counsel rendered ineffective assistance if error was not preserved. We affirm.

### I. *Background Facts and Proceedings.*

In May 1997, employees of Ray's SuperValu stopped Ceaser for shoplifting $30 worth of steak. Jason Robinson, the store manager, observed Ceaser put a quantity of meat down the front of his pants. Robinson confronted Ceaser and asked Ceaser to step to the back room with him, stating to Ceaser that he thought Ceaser had some stolen goods. Ceaser denied taking anything and quickly strode toward the exit. Another employee, Matt Bullerman, grabbed Ceaser and wrestled him to the floor. Ceaser struggled against the restraint by "throwing punches." During this tussle, the stolen meat came out of Ceaser's pants, coming to rest on the floor, and Robinson's glasses were knocked off.

Once Robinson and Bullerman had Ceaser under control, they proceeded to a back storeroom. On the way there and twice in the storeroom, Ceaser tried to escape. During the last attempt he successfully bolted from the storeroom, but Bullerman caught him in one of the aisles. Another struggle occurred in which Bullerman sustained a minor eye injury. Soon thereafter, the police arrived and Ceaser gave up his resistance.

The State charged Ceaser with second-degree robbery. Ceaser presented no evidence during trial, but did request a jury instruction on justification as a defense to the assault element of robbery. *See* Iowa Code §§ 704.3, 711.1(1). The court denied this request, holding in part that there was not substantial evidence to support the instruction. The jury returned a guilty verdict and the court imposed a mandatory ten-year sentence, specifically informing Ceaser that he was subject to the more onerous penalty imposed by section 902.12. Ceaser appeals.

### II. *Self–Defense Instruction.*

We review a challenge to the district court's refusal to submit a jury instruction for correction of errors of law. *See State v. Rains,* 574 N.W.2d 904, 915 (Iowa 1998). If substantial evidence exists showing that an affirmative defense applies, the trial

court must instruct on the defense. *See id.* Although the burden to disprove self-defense rests with the State, the defendant bears the burden of demonstrating that the record contains sufficient evidence to support an instruction on this issue. *See State v. Lawler,* 571 N.W.2d 486, 489 (Iowa 1997).

To understand the nature of the affirmative defense asserted by Ceaser, it is helpful to begin with a discussion of the underlying offense of second-degree robbery. The court submitted this charge under the first two alternatives of the general definition of robbery contained in the Iowa Code:

> A person commits a robbery when, having the intent to commit a theft, the person does any of the following acts to assist or further the commission of the intended theft or the person's escape from the scene thereof with or without the stolen property:
>
> 1. Commits an assault upon another.
> 2. Threatens another with or purposely puts another in fear of immediate serious injury.

Iowa Code § 711.1. The element implicated in the justification defense asserted by Ceaser is the assault element of robbery.

Iowa Code section 708.1 defines an assault in part as "[a]ny act which is intended to cause pain or injury to, or which is intended to result in physical contact which will be insulting or offensive to another, coupled with the apparent ability to execute the act" when done "without justification." *Id.* § 708.1(1). The "without justification" language of section 708.1 gives rise to the affirmative defense of justification to a charge of assault. *See State v. Delay,* 320 N.W.2d 831, 834 (Iowa 1982). The justification of self-defense, upon which Ceaser relies, is found in Iowa Code chapter 704: "A person is justified in the use of reasonable force when the person reasonably believes that such force is necessary to defend oneself or another from any imminent use of unlawful force." Iowa Code § 704.3.

At this point, it is helpful to turn to the facts of the present case. We think the critical issue here is whether Ceaser reasonably believed that his assaultive actions were necessary to defend himself from an "imminent use of unlawful force." This issue requires us to focus on the actions of the store employees toward Ceaser and to decide whether those actions could be fairly characterized as the use of "unlawful force."

At the time Robinson and Bullerman apprehended Ceaser, they were acting under the authority of Iowa Code section 808.12(1). This statute allows a merchant's employee to detain and search a shoplifter. *See id.* § 808.12(1) ("Persons concealing property ... may be detained and searched by a ... merchant's employee...."). In deciding exactly what force, if any, a merchant's employee may use to detain a shoplifter, we look first to the ordinary meaning of the word "detain." *See State v. White,* 545 N.W.2d 552, 555 (Iowa 1996) ("When examining a statutory term, we give words their ordinary meaning, absent any legislative definition or particular meaning in the law."). "Detain" is defined in the dictionary as "to hold or keep in or as if in custody" and "to restrain esp. from proceeding: hold back: STOP." *Webster's Third New International Dictionary* 616 (unabrid. ed.1993).

By authorizing merchants' employees to restrain shoplifters or hold them "in custody," the legislature must have contemplated the use of reasonable force to accomplish the detention. Such force would logically be that which would be permissible to prevent criminal interference with one's possession of property because the person being detained—a shoplifter—is interfering with a property right. Therefore, we turn to an examination of the force permitted to protect one's interest in property.

Iowa Code section 704.4 allows the use of "reasonable force to prevent or terminate criminal interference with the person's possession or other right in property." " 'Reasonable force' is that force and no more which a reasonable person, in like circumstances, would judge to be necessary to prevent an injury or loss...." Iowa Code § 704.1.

Applying the foregoing rules and definitions to this case, we conclude the store employees were lawfully entitled to use rea-

sonable force to stop Ceaser from leaving the store. Viewing the facts of this case in light of this standard, we find insufficient evidence that Robinson and Bullerman used unreasonable force to restrain Ceaser when he refused Robinson's request to accompany Robinson to the back of the store. There was no testimony that Ceaser was harmed in any way or that the store employees used any force beyond that necessary merely to detain Ceaser.

Because the force used by the employees was lawful, there is no basis upon which a jury could find that Ceaser reasonably believed his assaultive actions were necessary to defend himself from an "imminent use of unlawful force." Consequently, the trial court was correct in ruling that the evidence was insufficient to warrant an instruction on self-defense.

### III. Error Preservation on Equal Protection Claim.

Ceaser contends Iowa Code section 902.12, which requires that he serve his entire sentence, violates the Equal Protection Clauses of the United States and Iowa Constitutions. The State asserts Ceaser failed to preserve error on this issue in the district court. In response, Ceaser claims his sentence is void and, therefore, the normal error preservation rules are not applicable. *See State v. Austin,* 503 N.W.2d 604, 607 (Iowa 1993) (holding the requirement of error preservation does not bar review on appeal "when the appeal is from an illegal or void sentence").

■■■ The exclusion of illegal sentences from the principles of error preservation is limited to those cases in which a trial court has stepped outside the codified boundaries of allowable sentencing. *See State v. Halliburton,* 539 N.W.2d 339, 343 (Iowa 1995). In other words, the sentence is illegal because it is "beyond the power of the court to impose." *State v. Wilson,* 294 N.W.2d 824, 825 (Iowa 1980); *accord State v. McCright,* 569 N.W.2d 605, 608 (Iowa 1997). In the case before us the trial court is not criticized for *departing* from the sentencing authorized by law, but rather for sentencing Ceaser *in accordance with* the law. Thus, Ceaser's sentence is not illegal or void, even though it may be subject to a constitutional challenge. *See McCright,* 569 N.W.2d at 608. Consequently, Ceaser's equal protection claim is governed by our normal error preservation rules.

It is clear from the record that Ceaser's trial counsel did not make a constitutional challenge to the sentencing statutes in the district court. Therefore, any error with respect to this issue was not preserved for our review. *See id.* at 607. Our discussion does not end here, however, because Ceaser claims his trial counsel was ineffective in failing to make such a challenge. We address that issue next.

### IV. Ineffective–Assistance–of–Counsel Claim.

■■ A. *General principles.* We review the totality of relevant circumstances de novo when a defendant claims ineffective assistance of counsel. *See State v. Yaw,* 398 N.W.2d 803, 805 (Iowa 1987). To prevail on his ineffective-assistance-of-counsel claim, Ceaser must prove the following two conditions by a preponderance of the evidence: "(1) his trial counsel failed in an essential duty, and (2) prejudice resulted from counsel's error." *State v. Arne,* 579 N.W.2d 326, 328–29 (Iowa 1998). Although such claims are ordinarily preserved for postconviction relief actions, we will consider them on direct appeal if the record is adequate. *See State v. McPhillips,* 580 N.W.2d 748, 754 (Iowa 1998). We find the record here sufficient to determine that Ceaser's counsel did not render ineffective assistance. Consequently, we will decide Ceaser's ineffective-assistance-of-counsel claim on this direct appeal.

To prove that his trial counsel failed in an essential duty, Ceaser must show that "his attorney's performance fell outside the normal range of competency." *State v. Henderson,* 537 N.W.2d 763, 765 (Iowa 1995). Trial counsel is not incompetent in failing to pursue a meritless issue. *See McPhillips,* 580 N.W.2d at 754. Consequently, we now consider whether there is any merit to Ceaser's argument that section 902.12 violates the Equal Protection Clause.

■■ B. *Merits of equal protection claim.* Iowa Code section 902.12 states that a person

serving a sentence for certain specified crimes, including robbery in the second degree, "shall serve one hundred percent of the maximum term of the person's sentence and shall not be released on parole or work release."[1] Ceaser points out that this statute applies to some, but not all, forcible felonies. He argues that including second-degree robbery in section 902.12, "while not including other forcible felonies," is a violation of his equal protection rights under the federal and state constitutions. *See* U.S. Const. amend XIV, § 1; Iowa Const. art. 1, § 6. We apply the same analysis in considering the state equal protection claim as we do in considering the federal equal protection claim. *See State v. Bell,* 572 N.W.2d 910, 911 (Iowa 1997).

1. *Analytical framework.* Because a suspect classification is not implicated, we apply the rational basis standard in evaluating section 902.12. *See State v. Fagen,* 323 N.W.2d 242, 243 (Iowa 1982). Under this standard, section 902.12 is constitutional if the classification made by this statute "is a reasonable one and operates equally upon all within the class." *Bell,* 572 N.W.2d at 912. We will uphold a classification "if any state of facts reasonably can be conceived to justify it." *McMahon v. Iowa Dep't of Transp.,* 522 N.W.2d 51, 57 (Iowa 1994).

▆▆▆ The legislature enjoys broad discretion in defining and classifying criminal offenses. *See State v. Ragland,* 420 N.W.2d 791, 794 (Iowa 1988). Despite the discretion accorded the legislature in this area, "[u]nquestionably, [the] classification must be based upon some apparent difference in situation or circumstance of the subjects placed within one class or the other which establishes the necessity or propriety of distinction between them." *Chicago Title Ins. Co. v. Huff,* 256 N.W.2d 17, 29 (Iowa 1977). Thus, with respect to sentencing statutes, the legislature is free to impose disparate punishments for different crimes so long as the offenses are distinguishable on their elements. *See Delaney v. Gladden,* 397 F.2d 17, 19 (9th Cir.1968); *State v. Montoya,* 196

Colo. 111, 582 P.2d 673, 676 (Colo.1978) (en banc). In other words, if the elements of the offenses are not the same, persons committing the crimes are not similarly situated and, therefore, may be treated differently for purposes of the Equal Protection Clause. *See generally City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313, 320 (1985) (stating that the Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike"); 21 Am.Jur.2d *Criminal Law* § 594, at 982 (1981) (stating equal protection "requires that in the administration of criminal justice no person be subjected to a greater or different punishment for an offense than that to which others of the same class are subjected").

2. *Reasonableness of classification.* In considering the reasonableness of the classification made by the legislature in section 902.12, we look for a difference between second-degree robbery and the forcible felonies not subject to this sentencing statute to discern whether there is a distinction that reasonably accounts for the classification made by the legislature. Our analysis begins with an examination of the sentencing scheme of which section 902.12 is a part.

Section 702.11 classifies certain offenses as forcible felonies. These offenses, with certain exceptions not pertinent here, are "felonious child endangerment, assault, murder, sexual abuse, kidnapping, robbery, arson in the first degree, or burglary in the first degree." Iowa Code § 702.11. Although section 907.3 provides generally for deferred judgments, deferred sentences and suspended sentences, forcible felonies are specifically excluded from these options. *See id.* § 907.3. Consequently, persons convicted of forcible felonies are subject to mandatory imprisonment. These persons can, however, be released on parole, *see id.* ch. 906, with two exceptions or qualifications we shall now discuss.

Persons convicted of class "A" felonies must serve a life sentence and cannot be released on parole "unless the governor com-

---

1. This rule is modified somewhat by Iowa Code § 903A.2, which allows a reduction in a § 902.12 sentence for good conduct time, but not in excess of fifteen percent of the sentence. *See* Iowa Code § 903A.2. Sections 903A.2 and 902.12 are not inconsistent, as might appear at first blush, because § 903A.2 addresses the *length* of the sentence, whereas § 902.12 is concerned with whether the offender must *serve* the entire sentence.

mutes the sentence to a term of years." *Id.* § 902.1. Class "A" felonies include first-degree murder, first-degree sexual abuse, and first-degree kidnapping. *See id.* §§ 707.2, 709.2, 710.2.

A second subclass of forcible felonies is created by section 902.12. This statute provides that persons sentenced for certain specified forcible felonies must serve 100% of the maximum term of the person's sentence and cannot be released on parole or work release. *See id.* § 902.12. The forcible felonies listed in section 902.12 are second-degree murder, second-degree sexual abuse, second-degree kidnapping, first-degree robbery, and second-degree robbery. *See id.* These crimes, with the exception of robbery in the second degree, are class "B" felonies. *See id.* §§ 707.3, 709.3, 710.3, 711.2. Robbery in the second degree is a class "C" felony. *See id.* § 711.3.

The forcible felonies not within the two subclasses identified above comprise a third subclass. Persons committing crimes falling in this subclass are not required to serve any specific portion of the sentence imposed, and they are eligible for parole and work release.[2] *See generally id.* § 906.5(1).

Turning now to the constitutional challenge made in this case, the question we must answer is whether the distinction made between second-degree robbery and the forcible felonies falling in the third subclass is reasonable—is the different treatment accorded these crimes "based upon some apparent difference in situation or circumstance . . . which establishes the necessity or propriety of distinction between them"? *Huff,* 256 N.W.2d at 29.

Before we engage in a comparison of second-degree robbery with other forcible felonies, it is helpful to review the elements of this offense. The requirements for the crime of robbery are stated in section 711.1:

A person commits a robbery when, having the intent to commit a theft, the person does any of the following acts to assist or further the commission of the intended theft or the person's escape from the scene

thereof with or without the stolen property:

1. Commits an assault upon another.

. . .

Iowa Code § 711.1(1). An "assault" is "[a]ny act which is intended to cause pain or injury to, or which is intended to result in physical contact which will be insulting or offensive to another, coupled with the apparent ability to execute the act." *Id.* § 708.1(1).

It is also helpful for purposes of understanding Ceaser's argument to know the distinction between robbery in the first degree and robbery in the second degree. Robbery in the second degree is defined as follows: "[a]ll robbery which is not robbery in the first degree is robbery in the second degree." *Id.* § 711.3. "A person commits robbery in the first degree when, while perpetrating a robbery, the person purposely inflicts or attempts to inflict serious injury, or is armed with a dangerous weapon." *Id.* § 711.2. Thus, robbery in the second degree occurs when (1) a person intends to commit a theft and, (2) in order to accomplish the theft or an escape from the crime scene, (3) the person commits an assault (4) without purposely inflicting or attempting to inflict serious injury and when not armed with a dangerous weapon.

We now turn to a comparison of the elements of second-degree robbery with the elements of the crimes not encompassed within section 902.12. Such an examination reveals that the elements of those offenses not included within section 902.12 are different from the elements of second-degree robbery that we have just reviewed. *Compare* Iowa Code §§ 711.1, .3 (robbery in the second degree), *with id.* § 708.3 (assault while participating in a felony), *id.* § 708.4 (willful injury), *id.* § 708.6 (terrorism), *id.* § 709.4 (sexual abuse in the third degree), *id.* § 710.4 (third-degree kidnapping), *id.* § 712.2 (arson in the first degree), *id.* § 713.3 (burglary in the first degree), *and id.* § 726.6(2) (felonious child endangerment).

---

**2.** There are, however, other statutes not pertinent here that can affect the length of a forcible felon's sentence and the offender's eligibility for parole. *See, e.g.,* Iowa Code §§ 902.8 (habitual offender status), .11 (commission of a prior forcible felony).

Ceaser argues, however, that many of the crimes not included in section 902.12 require the infliction of serious injury or the use of a dangerous weapon, elements not present in second-degree robbery. Ceaser is correct that the crimes of class "C" assault while participating in a felony, willful injury, and felonious child endangerment require that the offender's conduct result in serious injury. *See id.* §§ 708.3, 708.4, 726.6(2). Class "C" terrorism requires the use of a dangerous weapon with the intent to injure or provoke fear or anger in another. *See id.* § 708.6. Class "C" assault with intent to commit sexual abuse requires that the offender commit an assault with the intent to commit sexual abuse *and* cause serious injury. *See id.* § 709.11. Although the requirements of serious injury and use of a dangerous weapon are absent in second-degree robbery, robbery combines an intent to commit a property offense with a crime against a person (intent to commit a theft and assault), so on this basis it is distinguishable from those crimes cited by Ceaser that do not include the infringement of a property right. The legislature could reasonably conclude that persons who are willing to use force to accomplish a theft, even when that force has not resulted in serious injury or does not involve a dangerous weapon, pose a greater risk to society than persons whose assaultive behavior is not used as a means to accomplish another crime.

This explanation does not, however, fully differentiate the crimes of assault with intent to commit sexual abuse and assault while participating in a felony from the crime of robbery in the second degree. Consequently, we briefly address these crimes separately.

As its name suggests, the crime of assault with the intent to commit sexual abuse requires an assault done "with the intent to commit sexual abuse." *Id.* § 709.11. "Sexual abuse" is a separate crime from "assault." *See generally id.* ch. 709. Although section 709.11 does not specifically require that the assault be motivated, as opposed to merely accompanied, by the desire to perpetrate sexual abuse, such a connection seems inherent in the crime. Notwithstanding that the crime of assault with intent to commit sexual abuse may entail an assault motivated by the intent to commit another crime, as does robbery, the crime of assault with intent to commit sexual abuse is still distinguishable from robbery. Sexual abuse is an assaultive crime against a person, *see id.* § 709.1, and, in this respect, the assault required by section 709.11 is merely a means to accomplish another crime against the person. In contrast, a person committing robbery uses the assault to commit a crime different in nature rather than degree—the property crime of theft. Thus, there exists a reasonable basis for the legislature to consider the crime of robbery as having a broader social impact and, therefore, deserving of a greater punishment. It is exactly this type of judgment call that comes within the wide latitude accorded the legislature in deciding the appropriate punishment for criminal offenses. *See Collins v. Johnston,* 237 U.S. 502, 510, 35 S.Ct. 649, 653, 59 L.Ed. 1071, 1079 (1915) ("But it is hardly necessary to say that the comparative gravity of the criminal offenses, and whether their consequences are more or less injurious, are matters for the state itself to consider.").

The only other crime that does not appear readily distinguishable from robbery is the offense of assault while participating in a felony. That crime is defined as follows:

Any person who commits an assault as defined in section 708.1 while participating in a felony other than a sexual abuse is guilty of a class "C" felony if the person thereby causes serious injury to any person; if no serious injury results, the person is guilty of a class "D" felony.

*Id.* § 708.3. Thus, assault while participating in a felony requires (1) participation in a felony other than sexual abuse and (2) an assault. This crime does not require that the defendant actually *commit* the predicate felony. *See State v. Mead,* 318 N.W.2d 440, 446 (Iowa 1982) ("a person may participate in an offense although he does not commit it"); Iowa Code § 702.13 (defining the phrase "participating in a public offense").

When we compare assault while participating in a felony with second-degree robbery, we see that they share a common, identical

element; both require an assault as defined in section 708.1. The similarity between these crimes ends there, however. Robbery requires an *intent* to commit a theft; assault while participating in a felony requires actual *participation* in a felony. Although a comparison of these elements may indicate that assault while participating in a felony is a more serious crime, such a conclusion would ignore the requirement in the robbery statute that the assault be used as a means to accomplish the intended theft or an escape from the crime scene. *See* Iowa Code § 711.1 (stating the defendant must commit an assault "to assist or further the commission of the intended theft or the person's escape from the scene thereof"). A similar requirement is not present in the crime of assault while participating in a felony. A person convicted of the latter crime need not perpetrate the assault to further commission of the felony or the person's escape from the scene of the felony. As we have already observed, the legislature could reasonably conclude that one who is willing to use unreasonable force to accomplish another crime without being apprehended is more dangerous than a person committing an assault without this illegal goal.

We do not overlook the fact that two crimes not included within section 902.12—arson in the first degree and burglary in the first degree—include both a property offense and a risk of harm to persons, as does second-degree robbery. Arson in the first degree occurs when, in general terms, a person causes a fire with the intent to destroy or damage property and "the property which the defendant intends to destroy or damage ... is property in which the presence of one or more persons can be reasonably anticipated, or the arson results in the death of a fire fighter...." *Id.* §§ 712.1, .2. A person commits burglary in the first degree when, again in general terms, the person enters an occupied structure with the intent to commit a felony, assault, or theft therein and "one or more persons are present [in the structure], the person has possession of an explosive or incendiary device or material, or a dangerous weapon, or [the person] intentionally or recklessly inflicts bodily injury on any person." *Id.* §§ 713.1, .3. Unlike robbery, these crimes do not require an assault that assists or furthers the commission of another crime or the defendant's escape from the scene of the crime. Consequently, there is a difference between the conduct being punished by the arson and burglary statutes and the conduct punished by the robbery statute—a difference upon which the legislature may reasonably base disparate punishments.

Because there is a rational basis for the legislature's inclusion of second-degree robbery within section 902.12, this court is not at liberty to declare the classification unconstitutional. Once it is established, as here, that the crimes treated differently address different criminal conduct, it is for the legislature to decide how the differing conduct will be punished. *See Collins,* 237 U.S. at 510, 35 S.Ct. at 653, 59 L.Ed. at 1079 (stating that "the comparative gravity of the criminal offenses, and whether their consequences are more or less injurious" are for the state legislatures to decide). *See generally Reed v. Reed,* 404 U.S. 71, 75, 92 S.Ct. 251, 253, 30 L.Ed.2d 225, 229 (1971) ("[T]he Fourteenth Amendment does not deny to States the power to treat different classes of persons in different ways.").

3. *Equal operation on members of the class.* As noted earlier, not only must a classification be reasonable, it must operate equally upon all within the class. That requirement is met here. All persons convicted of second-degree robbery are subject to a mandatory term of imprisonment without the possibility of parole or work release. *See Harris v. State,* 386 So.2d 393, 396 (Miss. 1980) (holding there was no "invidious class discrimination" in statute denying parole to all persons convicted of robbery with an exposed firearm, in part because all persons convicted of this crime were treated alike).

## V. *Disposition.*

We have found no basis to disturb Ceaser's conviction. Because the force used by the store employees was not unlawful, Ceaser was not justified in using force against them. Accordingly, the trial court correctly refused to instruct on self-defense as a justification for Ceaser's assault.

**200**

We also find no merit in Ceaser's equal protection challenge to Iowa Code section 902.12 insofar as it treats second-degree robbery differently than the forcible felonies not encompassed within that statute. Persons committing the criminal offenses not included in the classification established by section 902.12 are not situated similarly to Ceaser because the crimes of which they are guilty are distinguishable from second-degree robbery. Therefore, the legislature may punish Ceaser more severely than those persons committing crimes not included in section 902.12.

**AFFIRMED.**

CARTER, Justice (concurring specially).

I fully concur in the conclusions reached in the opinion of the court and in the result. I write separately to express my view that it is not necessary in order to reject the defendant's equal protection claim to identify similarities and differences between different crimes and reconcile the differing sentences provided therefor. The legislature has total discretion in that regard, and no equal protection claim should be recognized with respect to different punishments for different statutory crimes. If a particular statutory sentence is to be challenged as being too severe, this must be done by a proportionality challenge under the Eighth Amendment to the federal constitution.