**STATE of Iowa, Plaintiff–Appellee,**

v.

**Troy Harley JORGENSEN, Defendant–Appellant.**

No. 08–0916.

Court of Appeals of Iowa.

July 22, 2009.

Mark C. Smith, State Appellate Defender, and Theresa R. Wilson, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Elisabeth S. Reynoldson, Assistant Attorney General, Paul L. Martin, County Attorney, and Steven Tynan, Assistant County Attorney, for appellee.

Considered by SACKETT, C.J., and VOGEL and MILLER, JJ.

MILLER, J.

Troy Jorgensen was sentenced to a special ten-year sentence pursuant to Iowa Code section 903B.2 (Supp.2005) following his conviction for indecent exposure. He appeals, asserting ineffective-assistance-of-counsel claims. Because we find Jorgensen's counsel was not ineffective, we affirm.

## I. BACKGROUND FACTS AND PROCEEDINGS.

Following a bench trial, the district court entered a ruling on December 27, 2006, finding Jorgensen guilty of indecent exposure. The court sentenced Jorgensen to a suspended one-year sentence and placed him on probation for one year. Jorgensen appealed, and our supreme court affirmed his conviction. *See State v. Jorgensen,* 758 N.W.2d 830, 832 (Iowa 2008).

In March 2008, Jorgensen's probation was revoked and the original sentence was imposed. Approximately two months later, the district court resentenced Jorgensen to include a special ten-year sentence pursuant to section 903B.2. This section provides:

> A person convicted of a misdemeanor or a class "D" felony under chapter 709, section 726.2, or section 728.12 shall also be sentenced, in addition to any other punishment provided by law, to a special sentence committing the person into the custody of the director of the Iowa department of corrections for a period of ten years, with eligibility for parole as provided in chapter 906. The special sentence imposed under this section shall commence upon completion of the sentence imposed under any applicable criminal sentencing provisions for the underlying criminal offense and the person shall begin the sentence under supervision as if on parole. The person shall be placed on the corrections continuum in chapter 901B, and the terms and conditions of the special sentence, including violations, shall be subject to the same set of procedures set out in chapters 901B, 905, 906, and 908, and rules adopted under those chapters for persons on parole. The revocation of release shall not be for a period greater than two years upon any first revoca-

tion, and five years upon any second or subsequent revocation. A special sentence shall be considered a category "A" sentence for purposes of calculating earned time under section 903A.2.

Iowa Code § 903B.2.

Jorgensen appeals and asserts that his counsel was ineffective for failing to object to the imposition of the section 903B.2 sentence because it is unconstitutional. He argues that section 903B.2 violates the cruel and unusual punishment, equal protection, and due process clauses of the United States and Iowa Constitutions.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL.

■ We review ineffective-assistance-of-counsel claims de novo. *State v. Martin*, 704 N.W.2d 665, 668 (Iowa 2005). To prevail on an ineffective assistance of counsel claim, Jorgensen must show by a preponderance of the evidence that (1) counsel failed to perform an essential duty and (2) prejudice resulted. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984); *State v. Lane*, 726 N.W.2d 371, 393 (Iowa 2007). While we often preserve ineffective-assistance-of-counsel claims for postconviction proceedings, we consider such claims on direct appeal if the record is sufficient. *State v. Tate*, 710 N.W.2d 237, 240 (Iowa 2006). The record is sufficient to address Jorgensen's claims.

■ To prove that counsel breached an essential duty, a defendant must overcome a presumption that counsel was competent and show that counsel's performance was not within the range of normal competency. *State v. Buck*, 510 N.W.2d 850, 853 (Iowa 1994).

Although counsel is not required to predict changes in the law, counsel must exercise reasonable diligence in deciding whether an issue is worth raising. In accord with these principles, we have held that counsel has no duty to raise an issue that has no merit.

*State v. Dudley*, 766 N.W.2d 606, 620 (Iowa 2009) (citations omitted). To prove that prejudice resulted, a defendant must show there is a reasonable probability that but for counsel's unprofessional errors the result of the proceeding would have been different. *Ledezma v. State*, 626 N.W.2d 134, 143 (Iowa 2001).

■ Because counsel has no duty to raise a meritless issue, we will first determine whether Jorgensen's constitutional violation claims have any validity. *See Dudley*, 766 N.W.2d at 620. "If his constitutional challenges are meritorious, we will then consider whether reasonably competent counsel would have raised these issues and, if so, whether [Jorgensen] was prejudiced by his counsel's failure to do so." *Id.*

■ Jorgensen asserts that his counsel was ineffective for failing to raise various constitutional challenges to Iowa Code section 903B.2. Statutes are cloaked with a presumption of constitutionality. *State v. Musser*, 721 N.W.2d 734, 741 (Iowa 2006); *State v. Seering*, 701 N.W.2d 655, 661 (Iowa 2005). To overcome this presumption, Jorgensen must prove that section 903B.2 is unconstitutional beyond a reasonable doubt, which can only be accomplished by refuting "every reasonable basis upon which the statute could be found to be constitutional." *Seering*, 701 N.W.2d at 661 (citations omitted).

### A. Cruel and Unusual Punishment.

■ Jorgensen first claims counsel rendered ineffective assistance by not urging that section 903B.2 imposes cruel and unusual punishment in violation of the United States and Iowa Constitutions.

*See* U.S. Const. amend. VIII [1]; Iowa Const. art. I, § 17. Our supreme court recently addressed and rejected a similar claim under the federal constitution in *State v. Wade*, 757 N.W.2d 618, 624 (Iowa 2008), in which it determined: "Iowa Code section 903B.2 is not grossly disproportionate to the acts of committing the crime of indecent exposure and subsequently violating parole terms, and thus is not cruel and unusual punishment." *See State v. Cronkhite*, 613 N.W.2d 664, 669 (Iowa 2000) ("Generally, a sentence that falls within the parameters of a statutorily prescribed penalty does not constitute cruel and unusual punishment. Only extreme sentences that are 'grossly disproportionate' to the crime conceivably violate the Eighth Amendment." (citation omitted)). Jorgensen's attempt to distinguish his claim from that presented in *Wade* is unavailing, as is his suggestion that we should interpret the cruel-and-unusual-punishment clause in our state constitution more broadly than the similarly worded clause in the federal constitution.

Our supreme court has recognized that "[w]hen presented with sound reasons to do so, we will not hesitate to distinguish the protections afforded by the Iowa Constitution from those of the federal constitution." *State v. Allen*, 690 N.W.2d 684, 689 (Iowa 2005). Jorgensen, however, has offered no "sound reasons" for distinguishing the state constitutional right to be free from cruel and unusual punishment from the corresponding right under the federal constitution. Nor has he identified any legal deficiency in the federal principles

employed in examining a cruel-and-unusual-punishment claim. *See In re Detention of Garren*, 620 N.W.2d 275, 280 n. 1 (Iowa 2000) (refusing to deviate from federal analysis in considering state constitutional claim because appellant "suggested no legal deficiency in the federal principles"). In addition, our supreme court has applied the same analysis to federal and state cruel-and-unusual-punishment claims in past cases. *See, e.g., Seering*, 701 N.W.2d at 669–70; *Cronkhite*, 613 N.W.2d at 669; *Phillips*, 610 N.W.2d at 843–44. We therefore conclude there is no reason deviate from the federal analysis in considering Jorgensen's state constitutional claim. Thus, pursuant to our supreme court's decision in *Wade*, 757 N.W.2d at 624, we find no violation of the prohibition against cruel and unusual punishment under either the federal or state constitutions in this case.

**B. Equal Protection.**

Jorgensen next claims counsel rendered ineffective assistance by not urging that section 903B.2 violates the equal protection clauses of the United States and Iowa Constitution. *See* U.S. Const. amend. XIV, § 1; Iowa Const. art. 1, § 6.[2] The constitutional promise of equal protection "requires that 'similarly situated persons be treated alike under the law.'" *Wade*, 757 N.W.2d at 624 (citations omitted). Thus, to determine whether a statute violates equal protection, we must first determine whether the statute makes a distinction between similarly situated individuals. *Id.; cf. Varnum v. Brien*, 763

1. The Eighth Amendment is applicable to the states through the Fourteenth Amendment. *State v. Phillips*, 610 N.W.2d 840, 843 (Iowa 2000).

2. Unlike the preceding claim, neither party has argued that our equal protection analysis under the Iowa Constitution should differ in any way from our analysis under the United States Constitution. We therefore "decline to apply divergent analyses in this case." *See Wade*, 757 N.W.2d at 624 (using the same analysis to interpret the equal protection clauses of the United States and Iowa Constitutions because neither party suggested the Iowa provision should be interpreted differently than its federal counterpart).

N.W.2d 862, 884 n. 9 (Iowa 2009) (questioning the usefulness of the threshold similarly situated analysis but leaving the answer for another day).

■■■■ Jorgensen initially argues that section 903B.2 violates his right to equal protection of the law because it applies to some, but not all, sex crimes. "The legislature enjoys broad discretion in defining and classifying criminal offenses." *State v. Ceaser*, 585 N.W.2d 192, 196 (Iowa 1998). "Thus, with respect to sentencing statutes, the legislature is free to impose disparate punishments for different crimes so long as the offenses are distinguishable on their elements." *Id.* "In other words, if the elements of the offenses are not the same, persons committing the crimes are not similarly situated and, therefore, may be treated differently for purposes of the Equal Protection Clause." *Id.*

The offenses subject to the special ten-year sentence in section 903B.2 include misdemeanors and class "D" felonies under chapter 709 (sexual abuse), section 726.2 (incest), or section 728.12 (sexual exploitation of a minor). *See* Iowa Code § 903B.2. Jorgensen was convicted of the crime of indecent exposure, which is punishable as a serious misdemeanor under section 709.9, thus falling within the ambit of section 903B.2. He asserts that because other similar serious misdemeanor offenses, such as disseminating and exhibiting obscene material to a minor (Iowa Code section 728.2), admitting a minor to premises where obscene material is exhibited (section 728.3), and public indecent exposure in a place of business (section 728.5), are not subject to section 903B.2, the statute violates equal protection. We do not agree.

The offenses cited by Jorgensen are distinguishable on their elements from the offense of indecent exposure. Indecent exposure requires, in relevant part, that a person expose his or her genitals or pubes to someone other than a spouse with the specific intent to arouse the sexual desires of either party. Iowa Code § 709.9; *Jorgensen*, 758 N.W.2d at 834. The crimes identified by Jorgensen, on the other hand, prohibit the dissemination or exhibition of obscene material to minors. *See generally State v. Robinson*, 618 N.W.2d 306, 316 (Iowa 2000) (discussing the regulation of obscene material in chapter 728). As the State contends, those offenses, unlike the crimes subject to section 903B.2, "do not require any sexual motivation or actual participation by the defendant in the sex act." *See, e.g., State v. Gilmour*, 522 N.W.2d 595, 598 (Iowa 1994) (stating the "offenses of dissemination and exhibition of obscene material to minors under section 728.2 and sexual exploitation of a minor under section 728.12(1) are markedly different with respect to the nature of the criminal activity").

■■■■ Because "the crimes treated differently address different criminal conduct, it is for the legislature to decide how the differing conduct will be punished." *Ceaser*, 585 N.W.2d at 199. The legislature could have rationally determined that a classification imposing a special sentence on offenders that committed certain sexually motivated crimes "advances the governmental objective of protecting citizens from sex crimes." *Wade*, 757 N.W.2d at 625. Given that there is a rational basis for the legislature's inclusion of indecent exposure within section 903B.2, "this court is not at liberty to declare the classification unconstitutional." *Ceaser*, 585 N.W.2d at 199; *see also Reed v. Reed*, 404 U.S. 71, 75, 92 S.Ct. 251, 253, 30 L.Ed.2d 225, 229 (1971) ("[T]he Fourteenth Amendment does not deny to States the power to treat different classes of persons in different ways.").

In the same vein, we also deny Jorgensen's argument that section 903B.2 violates equal protection because the statute treats sex offenders differently than other criminal offenders. The same argument was rejected in *Wade*, in which the court concluded that "sex offenders are not similarly situated to other criminal offenders, and therefore, under this challenged classification, Iowa Code section 903B.2 does not violate equal protection." 757 N.W.2d at 626. We find *Wade* controlling in the present case and similarly reject Jorgensen's equal protection challenge to section 903B.2.

Jorgensen acknowledges that section 903B.2 "need only be rationally related to a legitimate governmental purpose." There is no doubt that the State has a strong interest in protecting its citizens from sex crimes. *See id.* at 625. Jorgensen argues that because Iowa already has mechanisms in place for imposing more severe punishment upon recidivist sex offenders, *see* Iowa Code ch. 901A (enhanced sentencing) and ch. 229A (civil commitment for sexually violent predators), the special sentence imposed under section 903B.2 is "not necessary and . . . not rationally related to the problem sought to be addressed." This argument is unavailing.

"As long as the classificatory scheme chosen by the legislature rationally advances a reasonable and identifiable governmental objective, we must disregard the existence of other methods that we, as individuals, perhaps would have pre-

ferred." *Wade*, 757 N.W.2d at 625 (internal quotation and citation omitted). As we stated, the classification found in section 903B.2 rationally advances the State's objective in protecting its citizens from sex crimes. *Id.* Trial counsel was not ineffective in failing to raise this meritless claim.

## C. Due Process.

Jorgensen next claims counsel rendered ineffective assistance by not urging that section 903B.1 violates his rights to substantive due process under the federal and state constitutions. *See* U.S. Const. amend. XIV; Iowa Const. art. I, § 9.[3]

In a substantive due process examination, first we determine the "nature of the individual right involved." *Seering*, 701 N.W.2d at 662. If a fundamental right is involved, we apply strict scrutiny analysis. *Id.; see State v. Groves*, 742 N.W.2d 90, 93 (Iowa 2007) ("Strict scrutiny requires us to determine whether the statute is narrowly tailored to serve a compelling state interest."). "[O]nly fundamental rights and liberties which are deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty qualify for such protection." *Seering*, 701 N.W.2d at 664 (citations and quotations omitted). On the other hand, if a fundamental right is not involved, we apply a rational basis analysis. *Id.*

Jorgensen contends that section 903B.2 infringes upon his "fundamental right to liberty, privacy, and freedom from governmental restraint." However, a

---

**3.** Again, neither party has argued that we should utilize a different analysis under the Due Process Clause of the Iowa Constitution, which is nearly identical in scope, import, and purpose to the Due Process Clause of the United States Constitution. *State v. Hernandez–Lopez*, 639 N.W.2d 226, 237 (Iowa 2002). Therefore, our discussion of Jorgensen's due-

process argument applies to both his federal and state claims. *Dudley*, 766 N.W.2d at 624 (using the same analysis to interpret the due process clauses of the United States and Iowa Constitutions because neither party suggested the Iowa provision should be interpreted differently than its federal counterpart).

person such as Jorgensen who has been convicted of a crime subjecting him to imprisonment has no fundamental liberty interest in freedom from extended supervision. *See Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451, 459 (1976).

> [G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution.

*Id.* Section 903B.2 commits a convicted person into the custody of the director of the Iowa Department of Corrections, where "the person shall begin the sentence under supervision as if on parole." "Any additional imprisonment· will be realized only if [the convicted person] violates the terms of ... parole." *Wade*, 757 N.W.2d at 624. Additionally, "[t]he protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v. Oliver*, 510 U.S. 266, 271–72, 114 S.Ct. 807, 812, 127 L.Ed.2d 114, 122 (1994). The matter involved here, the asserted right of a person convicted of and imprisoned for a crime to be free from parole supervision by the state, is different in kind than the privacy and liberty interests noted in *Albright*. *See People v. Oglethorpe*, 87 P.3d 129, 134 (Colo.Ct.App.2004) (discussing a substantive due process challenge to Colorado Sex Offender Lifetime Supervision Act of 1998, which requires imposition of indefinite sentence upon sex offender, and rejecting a strict scrutiny analysis because

"[a]n adult offender has no fundamental liberty interest in freedom from incarceration"). We agree with the State that a rational basis analysis applies here.

 A rational basis standard requires us to consider whether there is "a reasonable fit between the government interest and the means utilized to advance that interest." *Hernandez–Lopez*, 639 N.W.2d at 238. As we stated in the preceding section, "[t]he State has a strong interest in protecting its citizens from sex crimes." *Wade*, 757 N.W.2d at 625. Victims of sex crimes suffer from devastating effects, including physical and psychological harm. *See id.* at 626 (discussing that the devastating effects of sex crimes on victims provide a rational basis for classifying sex offenders differently). Furthermore, "[t]he risk of recidivism posed by sex offenders is 'frightening and high.'" *Id.* (quoting *Smith v. Doe*, 538 U.S. 84, 103, 123 S.Ct. 1140, 1153, 155 L.Ed.2d 164, 183–84 (2003)); *Seering*, 701 N.W.2d at 665.

 Jorgensen argues that "the assumption that the risk of recidivism posed by sex offenders is frightening and high is unwarranted."[4] Yet, he acknowledges that sex offenders are more likely than non-sex offenders to be rearrested for a sex offense.[5] We find there is a reasonable fit between the State's interest in protecting its citizens from sex crimes and the special sentence imposed pursuant to section 903B.2.

We also reject Jorgensen's argument that "once the law's sentence has been served, neither the public's antipathy nor fear are sufficient reasons to deny funda-

---

**4.** Jorgensen cites a report from the Bureau of Justice Statistics that concludes that sex offenders are less likely than non-sex offenders to be rearrested for any offense.

**5.** As one court has stated, "The legislature's assumptions about recidivism may be errone-

ous, but they are arguably correct and that is sufficient on a rational basis review to protect the legislative choice from constitutional challenge." *State v. Radke*, 259 Wis.2d 13, 657 N.W.2d 66, 75 n. 38 (Wis.2003).

mental rights . . . to an entire class based solely upon a possibility of a future crime." Section 903B.2 clearly states that a person convicted of third-degree sexual abuse, "shall also be sentenced, in addition to any other punishment provided by law, to a special sentence." Jorgensen is not being punished for "a future crime," but rather for indecent exposure. Furthermore, Jorgensen's sentence has not been served; the special sentence is part of his sentence for indecent exposure.

We conclude that Iowa Code section 903B.2 does not violate the due process clauses of the United States and Iowa Constitutions. Counsel did not render ineffective assistance by not urging that it did.

## III. CONCLUSION.

We conclude that Iowa Code section 903B.2 does not violate the United States or Iowa Constitutions as claimed. Therefore, we conclude that Jorgensen's counsel did not render ineffective assistance by not making such claims. We affirm the sentence imposed by the district court.

**AFFIRMED.**