# IN THE COURT OF APPEALS OF IOWA

No. 16-1253
Filed June 7, 2017

**VICTOR RIVERA,**
　　　Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
　　　Respondent-Appellee.
_____

Appeal from the Iowa District Court for Cerro Gordo County, Colleen D.
Weiland, Judge.

Applicant appeals from the denial of his application for postconviction
relief. **AFFIRMED.**

Dylan J. Thomas, Mason City, for appellant.

Thomas J. Miller, Attorney General, and Darrel Mullins, Assistant Attorney
General, for appellee State.

Considered by Mullins, P.J., and Bower and McDonald, JJ.

**MCDONALD, Judge.**

Victor Rivera, while driving under the influence of alcohol, caused a traffic accident that killed a motorcyclist and seriously injured the motorcyclist's passenger. Rivera fled the scene in his vehicle and led officers on a short chase before he was apprehended. Rivera pleaded guilty to unintentionally causing the death of another by operating a motor vehicle while intoxicated, in violation of Iowa Code section 707.6A(1) (2013), and failure to stop in the event of an accident resulting in death, in violation of Iowa Code section 321.261(4). The district court sentenced Rivera to an indeterminate term of incarceration not to exceed twenty-five years for the first offense and five years for the second offense, said sentences to be served concurrently. The district court was required to and did impose a mandatory minimum sentence pursuant to Iowa Code section 902.12(6).[1] The district court ordered Rivera to pay $150,000 in restitution pursuant to section 910.3B(1).

This case arises out of Rivera's application for postconviction relief. In his application, Rivera claimed imposition of the mandatory minimum sentence violates his right to equal protection under the federal and state constitutions and the prohibition against cruel and unusual punishment under the federal and state constitutions. He also claimed the restitution order violates the prohibition against cruel and unusual punishment in the state and federal constitutions. The district court dismissed the application for postconviction relief, and Rivera filed this appeal. "[W]e review an allegedly unconstitutional sentence de novo." *State*

---

[1] Recodified at section 902.12(1)(f).

*v. Lyle*, 854 N.W.2d 378, 382 (Iowa 2014) (citing *State v. Ragland*, 836 N.W.2d 107, 113 (Iowa 2013)).

I.

"To determine whether a statute violates equal protection, we first determine whether the statute makes a distinction between similarly situated individuals." *State v. Mitchell*, 757 N.W.2d 431, 436 (Iowa 2008) (citing *Wright v. Iowa Dep't of Corr.*, 747 N.W.2d 213, 216 (Iowa 2008)). If there is a distinction between similarly situated individuals, then the statute is subject to rational basis review "because th[e] case does not involve a fundamental right or suspect classification." *State v. Mann*, 602 N.W.2d 785, 792 (Iowa 1999). The statute will be upheld so long as it makes a reasonable classification and it "operates equally upon all within the class." *Id.* (quoting *State v. Ceaser*, 585 N.W.2d 192, 196 (Iowa 1998), *overruled on other grounds by State v. Bruegger*, 773 N.W.2d 862 (Iowa 2009)). As a general rule, "[w]e apply the same analysis in considering [a] state equal protection claim as we do in considering [a] federal equal protection claim." *Mann*, 602 N.W.2d at 792 (second and third alterations in original) (quoting *Ceaser*, 585 N.W.2d at 196).

Rivera challenges Iowa Code section 902.12(6). The statute provides:

A person serving a sentence for conviction of the following felonies . . . shall be denied parole or work release unless the person has served at least seven-tenths of the maximum term of the person's sentence:
      1. Murder in the second degree in violation of section 707.3.
      2. Attempted murder in violation of section 707.11.
      3. Sexual abuse in the second degree in violation of section 709.3.
      4. Kidnapping in the second degree in violation of section 710.3.

5. Robbery in the first or second degree in violation of section 711.2 or 711.3.

6. Vehicular homicide in violation of section 707.6A, subsection 1 or 2, if the person was also convicted under section 321.261, subsection 4, based on the same facts or event that resulted in the conviction under section 707.6A, subsection 1 or 2.

Iowa Code § 902.12. Rivera argues it violates equal protection to apply the mandatory minimum sentence to those convicted of causing the death of another by operating a motor vehicle while intoxicated and the failure to stop at an accident resulting in death but not those who are convicted only of causing the death of another by operating a motor vehicle while intoxicated.

The mere summary of Rivera's argument exposes the argument's fatal flaw—the two categories of persons are not similarly situated. The person convicted of causing the death of another by operating a motor vehicle while intoxicated and failing to remain at the scene has committed two separate offenses. The person who causes the death of another by operating while intoxicated and remains at the scene has committed only a single offense. The distinction between the two categories of offenders defeats Rivera's equal protection claim. *See, e.g., State v. Hochmuth*, 585 N.W.2d 234, 237 (Iowa 1998) (stating "once it is established that the crimes treated differently address different criminal conduct, it is for the legislature to decide how the differing conduct will be punished" (quoting *Ceaser*, 585 N.W.2d at 199)); *Ceaser*, 585 N.W.2d at 196 ("[I]f elements of the offenses are not the same, persons committing the crimes are not similarly situated and, therefore, may be treated differently for purposes of the Equal Protection Clause."); *State v. Kout*, 854 N.W.2d 706, 708 (Iowa Ct. App. 2014) ("A demonstration that people are

similarly situated is a threshold test; failure to make this showing requires no further consideration of the alleged equal protection violation." (citing *Varnum v. Brien*, 763 N.W.2d 862, 882 (Iowa 2009))).

Even assuming the two categories of offenders were similarly situated for constitutional purposes, the classification is reasonable and not in violation of equal protection principles. A classification is reasonable if it is "based upon some apparent difference in situation or circumstance of the subjects placed within one class or the other which establishes the necessity or propriety of distinction between them." *Chicago Title Ins. Co. v. Huff*, 256 N.W.2d 17, 29 (Iowa 1977). Where, as here, the classification is subject only to rational-basis review, the State is required to show the distinction has a rational relationship to a legitimate government interest. The State has a legitimate interest in ensuring intoxicated motorists remain at the scene of a motor vehicle accident. Remaining at the scene increases the likelihood an injured person will receive prompt aid. It facilitates the collection of personal information from parties involved in an accident. It facilitates the collection of evidence regarding the accident, specifically evidence regarding whether one of the parties was intoxicated and the level of intoxication. The sentencing statute bears a rational relationship to these important governmental interests. The sentencing statute incents intoxicated motorists involved in accidents to remain at the scene of the accident or, stated differently, deters intoxicated motorists from fleeing the scene.

"Statutes are presumed to be constitutional and, therefore, the defendant bears a 'heavy burden to show the statute clearly, palpably, and without a doubt, infringes the constitution.'" *Mann*, 602 N.W.2d at 791 (quoting *State v. White*,

545 N.W.2d 552, 554 (Iowa 1996)).  "A person challenging a statute must negate every reasonable basis upon which the statute could be upheld as constitutional." *Id.* (quoting *Schroeder Oil Co. v. Iowa State Dep't of Revenue & Fin.*, 458 N.W.2d 602, 603 (Iowa 1990)).  Rivera has not met this heavy burden. Application of the mandatory minimum sentence did not violate Rivera's rights to equal protection under the state or federal constitutions.  *See Hochmuth*, 585 N.W.2d at 237.

## II.

Rivera claims the mandatory minimum sentence imposed by section 902.12(6) constitutes cruel and unusual punishment in violation the Eighth Amendment of the United States Constitution and article I, section 17 of the Iowa Constitution.  Because Rivera makes no distinction between Iowa and federal constitutional rights, we will apply the same standard to both claims.  *See Bruegger*, 773 N.W.2d at 883.

## A.

Rivera first makes a "categorical challenge" to his sentence.  *See State v. Oliver*, 812 N.W.2d 636, 640 (Iowa 2012).  Under a categorical challenge, the relevant question is whether a particular sentencing practice violates the constitution.  *See id.*  In making that determination we look "to 'objective indicia of national consensus' regarding the use of a particular punishment."  *Id.* (quoting *Graham v. Florida*, 560 U.S. 48, 62 (2010)).  However, whether there is a community consensus "is not itself determinative of whether punishment is cruel and unusual."  *Graham*, 560 U.S. at 67.  Instead, the judicial exercise of independent judgment requires an "independent analysis of constitutionality of

the penalty based on 'the culpability of the offenders at issue in light of their crimes and characteristics, along with the severity of the punishment in question.'" *Oliver*, 812 N.W.2d at 640 (quoting *Graham*, 500 U.S. at 62). "As part of this independent analysis, [we] 'also consider[] whether the challenged sentencing practice serves legitimate penological goals.'" *Id.* (quoting *Graham*, 500 U.S. at 67).[2]

Rivera argues there is a national consensus against this type of punishment because the mandatory minimum sentence in section 902.12(6) is longer than the mandatory minimum sentences, if any, in other jurisdictions. In support of his argument, Rivera marshals an impressive review of the relevant sentencing provisions in our sister states. In our view, however, Rivera is not answering the relevant question. Rivera does not challenge the length of his sentence. Indeed, it appears the length of his sentence is roughly comparable to the length of the sentence that could be imposed on similar facts in many of our

---

[2] As noted by Chief Justice Roberts, this "categorical approach" in assessing the constitutionality of a term-of-years sentence is of "dubious provenance." *Graham*, 560 U.S. at 86 (Roberts, J., concurring). As Justice Thomas noted, the categorical approach deprives the citizenry of the right of self-governance in setting penal policy:

> But the Court is not content to rely on snapshots of community consensus in any event. Instead, it reserves the right to reject the evidence of consensus it finds whenever its own "independent judgment" points in a different direction. The Court thus openly claims the power not only to approve or disapprove of democratic choices in penal policy based on evidence of how society's standards have evolved, but also on the basis of the Court's "independent" perception of how those standards should evolve, which depends on what the Court concedes is "necessarily a moral judgment" regarding the propriety of a given punishment in today's society.

*Id.* at 102 (Thomas, J., dissenting) (citations omitted). While the categorical approach is controlling, legitimate criticism of its application outside the context of capital punishment informs our application of the doctrine.

sister states. Instead, Rivera challenges only the requirement that he serve seventy percent of his sentence prior to being eligible for parole. It is well established a constitutional term-of-years sentence does not become unconstitutional simply because it is also mandatory. *See State v. Cronkhite*, 613 N.W.2d 664, 669 (Iowa 2000). The relevant constitutional question is thus whether there exists a national consensus establishing it is too severe to impose a twenty-five-year sentence for causing the death of another while operating a motor vehicle while intoxicated and failing to remain at the scene of the accident. The authorities Rivera cites demonstrate there is no national consensus against a prison sentence of this length for this offense conduct.

Even if there were a national consensus against imposition of a sentence of this length for the offense conduct at issue, the national consensus is not dispositive of the issue. Each state is at liberty to punish the same act differently; it "is the very *raison d'être* of our federal system." *Harmelin v. Michigan*, 501 U.S. 957, 990 (1991). We thus must exercise independent judgment regarding the constitutionality of the sentence "based on 'the culpability of the offenders at issue in light of their crimes and characteristics, along with the severity of the punishment in question.'" *Oliver*, 812 N.W.2d at 640 (quoting *Graham*, 500 U.S. at 62).

Rivera argues the death here was unintentional and he is thus less culpable than those who purposely inflict intentional harm. Rivera ignores several critical issues. First, Rivera voluntarily chose to drink to the point of intoxication—his blood alcohol content was 0.19—and voluntarily chose to drive. He also intentionally left the scene of the accident without stopping to render

assistance to the motorcyclist. Second, even assuming he was less culpable than those who purposely inflict intentional harm, the consequences of Rivera's conduct were greater than those of other crimes with comparable sentences. The gravity of homicide is unparalleled. *See State v. Izzolena*, 609 N.W.2d 541, 550 (Iowa 2000). However, Rivera's sentence is the same sentence imposed for nonhomicide offenses, including attempted murder, sexual abuse in the second degree, kidnapping in the second degree, and robbery in the first degree. *See* Iowa Code § 902.12.

We also conclude the sentence serves legitimate penological goals. There are four legitimate penological justifications: retribution, deterrence, incapacitation, and rehabilitation. *Oliver*, 812 N.W.2d at 646. The sentence at issue advances the State's interest in retribution by requiring those who kill another and flee the scene to serve a significant portion of the required term of years. Rivera argues the sentence has no deterrent value because one cannot deter an unintentional act. Rivera's argument is too narrow. While it is clear one cannot deter an unintentional act, one can deter the intentional acts giving rise to the offense—the choice to drive while intoxicated. There was an additional intentional act Rivera ignores—the choice to flee the scene of an accident. Rivera concedes the statute advances the penological goal of incapacitation but argues incapacitation is a goal that should be reserved for demonstrated recidivists. This is an odd position for Rivera to take given that he has spent the greater part of his adult life in the criminal justice system. He has convictions for at least the following: multiple convictions for driving under the influence or driving while intoxicated; multiple convictions for criminal mischief; larceny;

escape from custody; multiple convictions for controlled substances violations; disorderly conduct; multiple convictions for fleeing a police officer in a motor vehicle; domestic assault; operating without a license; retail theft; and going armed with intent. At the time of his arrest, Rivera had outstanding warrants on pending charges of going armed with intent, burglary in the first degree, domestic assault, disorderly conduct, and interference with official acts. Setting this aside, Rivera's argument fails. The legislature need not wait for an offender to repeatedly violate the law prior to authorizing a lengthy prison sentence. The legislature has determined the combination of offenses at issue in this case warrants a lengthy prison sentence. The sentence advances legitimate penological goals. The determination was rational, and we need not dwell on the issue any further.

B.

Rivera also makes a "gross proportionality" challenge to his sentence. *See Oliver*, 812 N.W.2d at 640. In a gross proportionality challenge to a term-of-years sentence, the severity of the punishment is compared to the gravity of the crime to determine if there is an inference of gross disproportionality. *Id.* If the punishment is grossly disproportionate, then the court must complete an intrajurisdictional and interjurisdictional analysis to determine if the punishment is grossly disproportionate to similar crimes within the jurisdiction and to the same crime in differing jurisdictions. *Id.*

We first address the threshold question of whether Rivera's sentence leads to an inference of gross disproportionality. Our principal task at this stage is to balance the gravity of the crime against the severity of the sentence.

*Bruegger*, 773 N.W.2d at 873. In balancing these competing considerations, we consider several general principles. First, "we owe substantial deference to the penalties the legislature has established for various crimes." *Oliver*, 812 N.W.2d at 650. "Criminal punishment can have different goals, and choosing among them is within a legislature's discretion." *Graham*, 560 U.S. at 71. Second, "it is rare that a sentence will be so grossly disproportionate to the crime as to satisfy the threshold inquiry and warrant further review." *Oliver*, 812 N.W.2d at 650. Third, "a recidivist offender is more culpable and thus more deserving of a longer sentence than a first-time offender." *Id.* And finally, the unique circumstances of a defendant can "converge to generate a high risk of potential gross disproportionality." *Id.* at 651 (quoting *Bruegger*, 773 N.W.2d at 884).

The length of the sentence and the mandatory minimum sentence do not raise an inference of gross disproportionality when considered against the crimes at issue, generally. "[T]he taking of innocent life is considered the greatest universal wrong." *Izzolena*, 609 N.W.2d at 550. The gravity of certain offenses, including homicide by vehicle, is unparalleled. *Id.* It does not seem grossly disproportionate to impose a lengthy sentence for an offense of this gravity. Rivera nonetheless argues there is a gross disproportionality here because causing the unintentional death of another is a less culpable act. We disagree. First, it is important to note that the minimum sentence required by section 902.12(6) applies only where the defendant has been convicted of two separate offenses—causing the death of another while operating while intoxicated and fleeing the scene of the accident. Rivera thus understates the relevant conduct in a significant manner. Second, Rivera's premise that he is less culpable

because his act was unintentional is incorrect. "[D]riving while intoxicated has been prohibited by statute in this state since 1937." *State v. Adams*, 810 N.W.2d 365, 371 (Iowa 2012). Over time, the legislature has regularly increased the criminal penalties associated with operating while intoxicated and causing the death of another while operating while intoxicated. *See id.* at 370. Driving while intoxicated is inherently dangerous, and our legislature has determined one who chooses to drive while intoxicated and then takes the life of another has significant legal culpability.

The challenged sentence also does not give rise to an inference of gross disproportionality when considered against the specific offense conduct at issue. Rivera borrowed his brother-in-law's truck for the stated purpose of going out to do laundry. Instead, Rivera went to a bar and drank. His blood alcohol content tested at almost two-and-one-half times the legal limit. He ran over and killed a motorcyclist and seriously injured the passenger on the motorcycle. Rivera fled from the scene. He told the police he did not stop and "just kept going" because he knew he was drunk, knew he did not have a driver's license, and knew he would be "in trouble." When fleeing the scene, Rivera crossed over a median and drove against oncoming traffic, creating further danger. When the police apprehended Rivera after the accident, he was violent and belligerent, cursing at the officers and yelling he would "kick their asses." This is also not a singular event. Rivera has significant criminal history, including convictions for driving while intoxicated. Although Rivera treats this accident as if it were a routine traffic accident involving a first-time offender, it was anything but.

Although not dispositive of this appeal, we also note the sentences at issue were bargained for and imposed as part of a larger plea agreement. The prosecutor amended the charges to remove the applicable habitual offender enhancements and agreed to dismiss certain other charges pending in the State of Iowa. The prosecutor also agreed to contact two other states in which the defendant had pending charges to try and resolve those cases while the defendant was serving his sentence in Iowa. At the time of the plea bargain, the defendant clearly understood the consequences of his guilty plea.

Upon consideration of all of the relevant facts and circumstances of this case in light of the framework set forth in *Oliver*, we cannot conclude the imposition of this sentence in this case raises an inference of gross disproportionality. This case is not the "rare" circumstance where the mandatory minimum sentence was so grossly disproportionate to the crime to warrant further review. *Oliver*, 812 N.W.2d at 650. Because no such inference is created, "no further analysis is necessary" with respect to Rivera's gross proportionality challenge. *See id.*

III.

Rivera raises constitutional challenges to the restitution ordered pursuant to Iowa Code section 910.3B(1) plus $4281.75 to be paid to the Crime Victim Compensation Program. Section 910.3B(1) provides,

> In all criminal cases in which the offender is convicted of a felony in which the act or acts committed by the offender caused the death of another person, in addition to the amount determined to be payable and ordered to be paid to a victim for pecuniary damages, as defined under section 910.1, and determined under section 910.3, the court shall also order the offender to pay at least one hundred fifty thousand dollars in restitution . . . .

Iowa Code § 910.3B(1). He contends the amount of restitution violates the Eighth Amendment of the United States Constitution and article I, section 17 of the Iowa Constitution because it is cruel and unusual punishment. Rivera does not make a specific claim that the ordered restitution violates the Excessive Fines Clause. Because Rivera makes no distinction between the federal and state constitutional rights, we will review his argument under the federal framework for cruel and unusual punishment. *See Bruegger*, 773 N.W.2d at 883.

In *State v. Klawonn*, the defendant's excessive speed caused an accident killing another motorist. 609 N.W.2d 515, 517 (Iowa 2000). The supreme court determined restitution ordered pursuant to section 910.3B was not grossly excessive or disproportionate in light of the harm caused—the death of another person. *See id.* 519. In *Izzolena*, the court determined that a $150,000 restitution order was not grossly disproportionate to the harm caused when an intoxicated driver ran into a tree and her passenger died. 609 N.W.2d at 551.

Rivera argues his case is distinguishable because Rivera is older and would be at or beyond retirement age when finally released from prison. We find the distinction immaterial. The relevant inquiry in *Klawonn* and *Izzolena* was the offense conduct and the harm caused in relation to the restitution ordered. As stated in *Izzolena*, "[t]he manner in which the amount of a particular [restitution award] impacts a particular offender is not the focus of the test." 609 N.W.2d at 551 (citing *Klawonn*, 609 N.W.2d at 515). These cases are dispositive of Rivera's claim.

IV.

For the foregoing reasons, we affirm the judgment of the district court denying Rivera's application for postconviction relief.

**AFFIRMED.**